UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALTY MEDICAL EQUIPMENT, INC.,

                Plaintiff,

v                                              Case No. _____

                                              Hon. _____

MARK DOBRONSKI,

                Defendant.

_____/

**COMPLAINT AND JURY DEMAND**

**COMPLAINT**

Plaintiff Specialty Medical Equipment Inc., by and through its undersigned counsel, states the following as its Complaint against Defendant Mark Dobronski, and alleges as follows:

Introduction

1.    This is civil action for civil fraud, wire fraud (18 U.S.C. § 1343), and for violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. § 1964(c).

2. Defendant, Mark Dobronski, is a serial plaintiff, who frequently pursues claims against businesses, including healthcare providers, under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"). Mr. Dobronski's claim-seeking behavior has been identified as improper at-times, including in a recent case in this District, in which the Court found that Mr. Dobronski invited communications from TCPA defendants, thereby precluding his action against those same defendants.

3. Mr. Dobronski has now evolved his claim-seeking scheme by adopting one or more aliases in order to invite call-backs from businesses to telephone numbers that Mr. Dobronski has registered under the "do not call" list.

4. By adopting false names and identities in order to encourage this call-backs, Mr. Dobronski has crossed the line and committed fraud.

5. Upon information and belief, Mr. Dobronski has acted with the intention of fraudulently using false identities in order to further his scheme to pursue TCPA claims as a vocation.

6. While Congress has established a private right of action under the TCPA to ostensibly encourage private enforcement, a plaintiff is precluded from pursuing such claims when the plaintiff invites the call-back to a phone number on the "do not call" list.

7. Mr. Dobronski's actions have gone a step further, by attempting to disguise himself through the use of one or more aliases in order to deceive businesses to make such call-backs and later falsely claim that such calls were uninvited.

8. The Plaintiff in this civil action, Specialty Medical Equipment, Inc. ("SME") is one such victim of Mr. Dobronski's fraud.

9. SME is a provider of durable medical equipment and supplies ("DME"), serving patients who often rely on Medicare or other insurance for coverage. As part of its services, Plaintiff responds to inquiries from prospective patients, verifies their medical and insurance information (including Medicare beneficiary status and physician prescriptions), and arranges for the shipment of necessary medical equipment (such as diabetic testing supplies or CPAP machines for sleep apnea) directly to patients' homes.

10. In delivering these healthcare services, Plaintiff's business depends on truthful information from patients and healthcare providers. Plaintiff must trust that when an individual calls seeking medical supplies and provides personal and medical details, those details are accurate and genuine. False information can lead to improper billing to Medicare or insurers, wasted shipments, regulatory compliance issues, and other serious problems. Fraudulent inquiries are not

harmless – they can divert resources from real patients in need and jeopardize Plaintiff's standing with insurers and government payors.

11. On or around February 3, 2025, Mr. Dobronski called SME's call center.

12. The call center that received this initial call was located in the State of Texas.

13. On this initial call, Mr. Dobronski provided a false name (the "Alias" or "Fake Patient") and a false Medicare identification number ("False Medicare ID").

12. Over the course of a lengthy phone call Mr. Dobronski posed under the Alias and spun an entirely false narrative that he was a legitimate patient in need of diabetes and sleep apnea supplies.

13. Defendant gave false answers about his health status, equipment use, and insurance details so convincingly and thoroughly that Plaintiff's staff had little reason at the time to doubt the legitimacy of the call. Defendant's level of detail and patience in carrying out this ruse demonstrates the deliberate nature of his fraud – this was not a prank or a momentary lie, but a methodical deception executed to mislead Plaintiff.

14. Mr. Dobronski was informed that SME could serve as a DME provider and he requested that SME provide DME that the Fake Patient allegedly required.

15. Dr. Dobronski, while still posing as the Fake Patient, invited SME to communicate with him via telephone and provided a real call-back number ("Call Back Number") that was registered to Mr. Dobronski.  The Call Back Number is/was a Michigan-based telephone number.

16. Mr. Dobronski, while still posing as the Fake Patient, also provided a real street address for a property that is owned by Mr. Dobronski and his wife—and is not owned by the Fake Patient or anyone using that name.

17. Mr. Dobronski, while still posing as the Fake Patient, further provided the name of a physician, who was ostensibly the Fake Patient's treating doctor.

18. The following day, on February 4, 2025, Mr. Dobronski called SME while again using the Alias/posing as the Fake Patient.  He again verified the Alias and contact information.

19. On the February 4, 2025, call, an SME representative stated that an updated prescription was needed for certain supplies.

20. Thereafter, SME discovered that the False Medicare ID was inaccurate and/or non-existent.

21. SME sought to clarify this issue and issues related to physician orders for the Fake Patient by calling the Call Back Number.

22. SME representatives left a message for the Fake Patient at the Call Back Number, which was a Michigan-based phone number.

23. Thereafter, Mr. Dobronski called SME from a new, Florida-based, phone number. However, in this third-conversation, he ceased using the Alias and revealed his true identity.

24. Mr. Dobronski informed the SME representative that the Call Back Number did, in-fact, belong to Mr. Dobronski and that this number was on the TCPA "do not call" list.

25. Notably, the voice on this subsequent call was the same as that in the initial calls in which the Alias was provided by Mr. Dobronski, while previously posing as the Fake Patient.

26. During this final phone conversation, Mr. Dobronski complained that the Call Back Number was on the TCPA "do not call" list. Mr. Dobronski further identified to SME a series of multiple telephone numbers that he had registered and placed on the "do not call" list, including the Call Back Number that he had previously provided while using the Alias in his calls to SME.

27. Ultimately, Defendant's conduct was a deliberate and malicious fraud. In truth, Defendant was engineering a fraud: by posing as a patient and giving false

information, he intended to trick Plaintiff's business into acting on the false claims, potentially to later exploit those interactions for personal gain.

28. Plaintiff brings this action to hold Defendant accountable for his fraudulent misrepresentations and to prevent further abuse. Plaintiff seeks compensatory damages for the time, resources, and costs wasted by Defendant's fraud, punitive damages given Defendant's willful and malicious conduct, and injunctive relief to bar Defendant from engaging in such fraudulent schemes in the future. Plaintiff is determined to put an end to Defendant's pattern of abusive tactics and serial litigation schemes that target legitimate companies.

## Parties

29. Plaintiff Specialty Medical Equipment Inc. ("SME" or "Plaintiff") is a Michigan corporation with its principal place of business at 52040 Van Dyke Ave, Shelby Township, MI 48316. Plaintiff is in the business of providing home delivery of medical equipment and supplies to patients nationwide. Plaintiff is a reputable company serving vulnerable patients by coordinating physician prescriptions, insurance (including Medicare) billing, and delivery of critical medical supplies to homes across the country.

30. Defendant Mark Dobronski is, upon information and belief, an individual residing in the City of Windmere, State of Florida.

31. Dobronski is not a customer or patient of Plaintiff, but rather a person who, as described above, engaged in a fraudulent scheme targeting SME. Upon information and belief, Defendant Dobronski is a serial litigant who has filed dozens of lawsuits – by some accounts over 90 lawsuits – under the TCPA and related statutes, fabricating scenarios to provoke calls or interactions with companies and then suing those companies for financial gain.

## Jurisdiction and Venue

32. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1367 because, *inter alia,* Plaintiff brings claims under RICO and for wire fraud and all other claims are supplemental to the same.

33. Alternatively, this Court has diversity jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds $75,000 exclusive of interest and costs, and Plaintiff (a citizen of Michigan) and Defendant (upon information and belief, a citizen of Florida) are citizens of different states. The amount in controversy, including the value of Plaintiff's losses and the punitive and injunctive relief sought, exceeds $75,000.

34. This Court has personal jurisdiction over Defendant because Defendant's fraudulent acts were purposefully directed toward a Michigan corporation and occurred (via telephone communications) in this District. Defendant initiated contact with Plaintiff's Michigan offices, provided a Michigan

address (albeit falsely) as his residence, and identified a Michigan physician, thereby availing himself of the laws and jurisdiction of Michigan. Defendant's acts caused harm to Plaintiff in Michigan, and he should reasonably anticipate being haled into court in Michigan as a result of his intentional misconduct.

35. Venue is proper in the Eastern District of Michigan pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Without limitation, Defendant directed his false representations via telephone calls to SME, which is located in this District.

## Count I – Fraud

36. Plaintiff incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

37. Defendant made multiple representations of material facts to Defendant, including, but not limited to the following:

> A. That the Fake Patient existed and that Defendant's name was actually the Alias;
>
> B. That Defendant's Medicare identification number was the False Medicare ID;
>
> C. That the Fake Patient was the owner of the Call Back Number;
>
> D. That the Fake Patient had a treatment relationship with a particular Michigan physician;

9

   E. That the Fake Patient lived at a residence in Dexter, MI;

   F. That the Fake Patient suffered from health conditions, including diabetes and the need for a CPAP machine and/or other DME; and

   G. That the Fake Patient wished to form a relationship with SME for the supply of DME.

 38. These representations were each false when made.

 39. Defendant knew that these representations were false when made.

 40. Defendant made these representations with the intention that SME rely on them.

 41. Without limitation, Defendant utilized the Alias and the related story regarding the needs of the Fake Patient in order to set-up a fraudulent TCPA case against SME after it called the Call Back Number.

 42. SME relied on these false representations.

 43. Plaintiff, SME, was damages as the result of its reliance.

 44. Without limitation, Plaintiff incurred expense in pursuing the set-up of a DME supply relationship with the Fake Patient.

 45. Plaintiff further incurred expense, including administrative expense and legal fees, after discovering that the Fake Patient was likely a falsified identify of Defendant, Mr. Dobronski, that was used to "catfish" SME into calling the Call Back Number. This included pre-litigation expense required to address the

potential of a fraudulent TCPA claim from the serial TCPA claimant, Mr. Dobronski.

46. Plaintiff, SME, has further suffered humiliation and embarrassment due to pursuing communications with third parties, including an alleged treating physician, for a Fake Patient, which has caused harm to SME's professional reputation.

47. Therefore, Plaintiff seeks damages in excess of $75,000, including direct damages, exemplary damages, punitive damages, attorneys fees, costs, interest, and all other elements of damages available at law.

48. Plaintiff further seek a preliminary and permanent injunction to preclude Mr. Dobronski from making any contact, directly or indirectly, whether under his real name, the Alias, or any other false name, with SME and/or any of its affiliates.

## Count II – Wire Fraud; Civil RICO

49. Plaintiff incorporates by reference all other allegations and paragraphs of this Complaint and, to the extent necessary, pleads this Count in the alternative.

50. Pursuant to 18 U.S.C. § 1964, a person injured through a violation of RICO (18 U.S.C. 1962), may sue for and recover threefold damages, the costs of a lawsuit, and reasonable attorneys fees.

51. Pursuant to 18 U.S.C. § 1962(c), "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt."

52. Mr. Dobronski is an "enterprise" under RICO because that term, as defined, includes an individual. 18 U.S.C. § 1961.

53. Upon information and belief, Mr. Dobronski is or may have been, engaged in a wider enterprise with his wife, Susan Dobronski, and the limited liability company that they co-own, Safe Train, L.L.C., which operates from their residence in Florida.

54. Mr. Dobronski is further a person associated with these enterprises.

55. Mr. Dobronski further conducted the activities of these enterprises through a pattern of racketeering activity.

56. Without limitation, Mr. Dobronski's actions constitute wire fraud pursuant to 18 U.S.C. § 1343, which a form of "racketeering activity" under 18 U.S.C. § 1961.

    A. Mr. Dobronski voluntarily and intentionally devised and participated in a scheme to defraud SME out of money.

      i. Without limitation, he utilized false information, including the Alias, in order to encourage and "catfish" SME into to calling the Call Back Number for the purpose of establishing a false TCPA claim.

B. Mr. Dobronski did this with the intent to defraud.

C. It was reasonably foreseeable that interstate wire communication would be used.

D. Without limitation:

      i. Mr. Dobronski called from both Michigan-based and Florida-based telephone numbers during the series of calls involved;

      ii. The original call center called by Mr. Dobronski used a toll-free number without any particular state-based area code. Thus, it was likely that the call would be through interstate commerce;

      iii. On the initial February 3, 2025, call, it was identified to Mr. Dobronski that the call center he reached was located in Texas.  Mr. Dobronski then participated in a follow-up call with the call center, while using the Alias, and while re-

13

     affirming the Fake Patient's false information, including the

     Call Back Number; and

   iv. SME ships DME across the United States through interstate

     commerce and is clear about this.

  E. Interstate communications were, in-fact, used by Mr. Dobronski

   during each of the calls in which he utilized the false information.

  57. These Racketeering Activities were a pattern in-and-of-themselves because Mr. Dobronski used multiple fraudulent wire communications to perpetrate his scheme.

  58. Furthermore, upon information and belief, Mr. Dobronski, as a serial TCPA plaintiff, has utilized his wire fraud schemes with regard to other unsuspecting companies in a manner similar to the fraud he perpetrated against SME.

  59. Upon information and belief, Mr. Dobronski has utilized his schemes to "catfish" companies for the purpose of establishing fraudulent TCPA claims for a continuous period of years.

  60. Accordingly, pursuant to 18 U.S.C. § 1964, Plaintiff seeks damages in excess of $75,000, including treble damages, costs, and reasonable attorneys fees.

**WHEREFORE**, Plaintiff, Specialty Medical Equipment Inc. respectfully requests that the Court enter Judgment in its favor and against Defendant, Mark Dobronski, and grant injunctive relief and damages in excess of $75,000, including any/all available elements of damages or recovery, including but not limited to the following:

A. Direct damages;

B. Treble Damages:

C. Exemplary Damages;

D. Punitive Damages;

E. Costs;

F. Attorneys Fees;

Plaintiff further requests that he Court grant any other relief that is just and equitable.

Respectfully Submitted,

**DATED: MARCH 7, 2025**

/s/     Robert Dindoffer
The Health Law Partners, P.C.
ROBERT DINDOFFER (P72319)
Attorneys for Plaintiffs
32000 Northwestern Hwy., Ste. 240
Farmington Hills, MI 48334

(248) 996-8510
rdindoffer@thehlp.com

## **JURY DEMAND**

Plaintiff hereby requests trial by jury for all claims so triable.

Respectfully Submitted,

DATED: MARCH 7, 2025               /s/     Robert Dindoffer
                                                      The Health Law Partners, P.C.
                                                      ROBERT DINDOFFER (P72319)
                                                      Attorneys for Plaintiffs
                                                      32000 Northwestern Hwy., Ste. 240
                                                      Farmington Hills, MI 48334
                                                      (248) 996-8510
                                                      rdindoffer@thehlp.com