UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALTY MEDICAL EQUIPMENT, INC.,

       Plaintiff,

                                 Case No. 2:25-cv-10664-MAG-CI
-v-                            Hon.  Mark A. Goldsmith
                                 Magistrate Curtis Ivy, Jr.

MARK DOBRONSKI,

       Defendant.

_____/

**DEFENDANT MARK DOBRONSKI's MOTION TO DISMISS
PLAINTIFF'S COMPLAINT
PURSUANT TO FRCP 12(B)(6)**

Mark  Dobronski,  ("Dobronski")  through  undersigned  counsel,  pursuant  to
Fed.R.Civ.P. 12(B)(6), for failure to state a claim upon which relief can be granted.
In support of this Motion, Defendant states as follows:

      1.     On  March  26,  2025,  pursuant  to  Local  Rule  7.1(a)(2),  Defendant's
counsel attempted to contact Plaintiff's counsel by telephone to seek concurrence in
this  motion,  but  was  unable  to  connect  despite  leaving  a  message.  Despite  this
reasonable and timely effort to confer with Plaintiff's counsel, Defendant's counsel
was unable to conduct the conference.

2.      On March 27, 2025, Defendant's counsel sent an email to Plaintiff's counsel outlining the basis for this motion and seeking concurrence. As of the time of filing, Plaintiff's counsel has not responded.

3.      The Complaint fails to state a claim upon which relief can be granted for the following reasons:

a. Failure to allege a valid RICO enterprise distinct from Mr. Dobronski's personal conduct and family relationships;

b. Legally insufficient allegations of predicate acts of wire fraud;

c. Failure to plausibly allege a "pattern" of racketeering activity;

d. Lack of legally cognizable reliance for the fraud claim; and

e. Mr. Dobronski's actions constitute protected petitioning activity under the Noerr-Pennington doctrine.

4.      These deficiencies are fundamental to the theories pled and cannot be cured by amendment.

WHEREFORE, Defendant respectfully requests that this Honorable Court dismiss

Plaintiff's Complaint with prejudice.

<div style="margin-left:40%">

Respectfully submitted,

Weisman, Young & Ruemenapp, P.C.

/s/David E. Sims
David E. Sims (P41636)
Attorneys for Defendant, Mark
Dobronski
Email:  dsims@wyrpc.com

</div>

Dated: March 27, 2025

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\MSJ-1.docx

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALTY MEDICAL EQUIPMENT, INC.,

        Plaintiff,

                              Case No. 2:25-cv-10664-MAG-CI

-v-                            Hon.  Mark A. Goldsmith

                              Magistrate Curtis Ivy, Jr.

MARK DOBRONSKI,

        Defendant.

_____/

**BRIEF IN SUPPORT OF DEFENDANT MARK DOBRONSKI's
MOTION TO DISMISS
PLAINTIFF'S COMPLAINT PURSUANT TO FRCP 12(B)(6)**

## STATEMENT OF QUESTIONS PRESENTED

I. Whether SME's Complaint sufficiently alleges a valid Civil RICO enterprise when the claimed enterprise is indistinct from Defendant Dobronski's personal conduct, family relationships, and closely held business, and no separate ongoing structure or decision-making framework is identified?

II. Whether SME adequately states a Civil RICO claim predicated upon wire fraud by alleging that Defendant invited callbacks to his registered "do not call" number, where the alleged conduct involves no scheme to defraud SME of money or property through deception?

III. Whether SME sufficiently pleads a "pattern" of racketeering activity under Civil RICO by alleging a single isolated incident involving a TCPA violation, without showing continuity or relatedness beyond the singular occurrence described in the Complaint?

IV. Whether SME can plausibly allege a claim for common-law fraud where it cannot establish legally cognizable reliance due to mandatory regulatory and statutory requirements, including a written prescription from a licensed physician, before SME could act upon any representation allegedly made by Defendant?

V. Whether Defendant Dobronski's lawful exercise of rights under the Telephone Consumer Protection Act (TCPA), including his litigation activities, is protected petitioning activity immunized from liability under the Noerr-Pennington doctrine, thus mandating dismissal of SME's retaliatory claims?

## CONTROLLING OR MOST APPROPRIATE AUTHORITY FOR THE RELIEF SOUGHT

1. Federal Rule of Civil Procedure 12(b)(6) – Establishes the standard for dismissal based upon a plaintiff's failure to state a plausible claim for relief.

2. Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007) – Sets forth the standard requiring factual allegations sufficient to raise a right to relief above the speculative level.

3. Ashcroft v. Iqbal, 556 U.S. 662 (2009) – Reinforces the standard of plausibility required for a complaint to survive dismissal, emphasizing that bare assertions devoid of factual enhancement fail under Rule 12(b)(6).

4. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158 (2001) – Clarifies that a Civil RICO enterprise must be distinct and separate from the defendant's personal conduct or ordinary business relationships.

5. Ouwinga v. Benistar 419 Plan Servs., Inc., 694 F.3d 783 (6th Cir. 2012) – Articulates that a RICO enterprise requires an identifiable organizational structure with defined roles and decision-making capacity separate from the predicate racketeering activity itself.

6. United States v. Prince, 214 F.3d 740 (6th Cir. 2000) – Defines elements required to allege wire fraud, notably requiring an intent to defraud and obtain money or property through deception.

7. H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229 (1989) – Clarifies the necessity for allegations to establish both continuity and relatedness of predicate acts to constitute a RICO pattern.

8. Vemco, Inc. v. Camardella, 23 F.3d 129 (6th Cir. 1994) – Emphasizes that isolated or short-term conduct directed at a single alleged victim does not satisfy RICO's continuity requirement.

9. Sullivan v. Thomas Org., PC, 88 Mich. App. 77 (1979) – Sets forth Michigan's litigation privilege, which immunizes statements made in anticipation of litigation from forming the basis of actionable fraud claims.

10. Mey v. Pintas, 734 F.Supp.3d 515 (N.D. W. Va. 2024) – Highlights that TCPA enforcement by private litigants, even repeated or vigorous litigation, is expressly encouraged by Congress and does not constitute abuse of litigation or fraud.

11. Noerr-Pennington Doctrine (United Mine Workers v. Pennington, 381 U.S. 657 (1965); Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961)) – Provides immunity for activities, including litigation, intended to petition the government for redress, barring claims that target such protected activities unless shown to be objectively baseless and motivated solely by harassment.

# INTRODUCTION

Plaintiff Specialty Medical Equipment, Inc. ("SME"), a company engaged in aggressive telemarketing practices targeting vulnerable senior citizens, has filed a preemptive and retaliatory lawsuit against Mark Dobronski ("Dobronski") to intimidate him from exercising his rights under the Telephone Consumer Protection Act ("TCPA"). SME's business model relies heavily on invasive robocalls and phone solicitations to pressure seniors into purchasing medical equipment—practices that directly violate the TCPA's prohibitions. SME's documented history, including multiple lawsuits filed against its affiliates like AJT Diabetic, Inc., Am-Med Diabetic Supplies, Inc., Life Quality Health Care, Quality Medical Products, and MBKD, Inc. evidences a broader pattern of systemic violations of consumer protection laws. These lawsuits allege deceptive telemarketing practices such as autodialed calls to individuals on the National Do Not Call Registry, falsified Caller ID information, and repeated harassment despite explicit requests to cease contact. Fearing accountability for its knowingly unlawful conduct, SME seeks to weaponize civil RICO[1] and fraud claims to silence Dobronski, a private citizen attempting to enforce compliance with federal consumer protection laws.

---

[1] Court's have made clear that "[c]ivil RICO is an unusually potent weapon-the litigation equivalent of a thermonuclear device." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir.1991)) (internal quotation marks omitted). "Because the mere assertion of a RICO claim ... has an almost inevitable stigmatizing effect on those named as defendants, ... courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y.1996).

The Complaint is a transparent attempt to chill the exercise of statutory rights guaranteed by Congress. By filing this baseless federal action, SME—a corporation with vastly superior resources—aims to deter Dobronski and other ordinary citizens from enforcing the TCPA. This tactic undermines the very purpose of the TCPA, which was enacted to protect individuals from the predatory telemarketing practices SME employs. The allegations of "fraud" and "racketeering" are nothing more than a cynical distortion of Dobronski's lawful efforts to document and challenge SME's misconduct and an unjustified attempt to characterize lawful enforcement efforts as criminal misconduct.

Critically, the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). SME's RICO allegations are devoid of the required elements: there is no "enterprise," no "pattern of racketeering activity," and no cognizable injury. Instead, SME seeks to repurpose RICO—a statute designed to combat organized crime—as a tool to punish individuals who dare to invoke their rights under consumer protection laws. Such misuse of RICO is not only legally untenable but also antithetical to public policy. Courts have repeatedly rejected efforts to convert lawful TCPA enforcement into fodder for retaliatory litigation.

---

For the reasons below, this Court should dismiss the Complaint with prejudice and sanction SME for its blatant attempt to subvert the TCPA and use its vast resources intimidate a private citizen into silence.

## STATEMENT OF FACTS

According to the Complaint, on or around February 3, 2025, Dobronski contacted SME's call center under a false name, allegedly providing fraudulent details about medical conditions, Medicare coverage, and his treating physician. SME alleges that Dobronski, using this alias, gave SME a call-back number he had registered with the TCPA "do not call" list. After verifying certain details, SME representatives attempted to contact Dobronski via the provided number, prompting Dobronski to subsequently claim that SME violated TCPA regulations by calling this registered "do not call" number.

Based on these allegations, SME claims that Dobronski orchestrated wire fraud and civil RICO violations by intentionally inducing SME to violate the TCPA, with the alleged purpose of pursuing litigation against SME.

The reality is SME and its owners, David and Robin Soblick, have a documented history of engaging in unlawful telemarketing practices, as demonstrated by multiple lawsuits filed against its affiliates, including AJT Diabetic, Inc., Am-Med Diabetic Supplies, Inc., Life Quality Health Care, Quality Medical Products, and MBKD, Inc. These lawsuits allege violations of the TCPA involving deceptive telemarketing tactics such as autodialed calls to individuals on the

3

National Do Not Call Registry, falsified Caller ID information, and repeated calls after explicit requests to cease contact. This pattern illustrates that SME and its affiliates systematically violate consumer protection laws and resort to aggressive litigation tactics to shield themselves from accountability.

In the present case, SME initiated unsolicited telemarketing calls to Defendant Dobronski using a falsified Caller ID, presenting itself as the "Diabetic Supply Team," a non-existent entity. SME's telemarketers aggressively solicited sensitive personal information under the pretense of offering "free" products, explicitly requesting Dobronski's Medicare number. To identify SME and protect himself from such unlawful solicitations, Dobronski used an investigative practice known as a "canary trap," providing SME's telemarketer with false personal details. Subsequently, Dobronski contacted SME's customer service, explicitly informing a supervisor purportedly named Felicia J. Toledo that SME's telemarketing practices violated the TCPA and requested identification of the offending telemarketer. Supervisor Toledo falsely claimed there was no record of the calls and deferred compliance on Dobronski's inquiry. Rather than addressing its misconduct, SME retaliated by filing this lawsuit.

## LEGAL ARGUMENT

## I. LEGAL STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) mandates dismissal of a complaint where Plaintiff has failed "to state a claim upon which relief can be granted." The

complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass 'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007)). The Court must construe the complaint "in favor of the plaintiff, ... and determine whether plaintiffs factual allegations present plausible claims." Mapal, Inc. v. Atarsia, 147 F.Supp.3d 670, 676 (E.D. Mich. 2015). The complaint does not "suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The Federal Rules demand "more than unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 556 U.S. at 678. The "plausibility standard requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Mapal*, 147 F.Supp.3d at 676 (quoting Iqbal, 556 U.S. at 678). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'shown' - 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Defendant Dobronski acknowledges that certain contextual information provided in this motion extends beyond the pleadings. However, this additional context is offered solely to illuminate the nature of this dispute for the Court's benefit and should not be construed as relying on extrinsic facts for the purposes of this Rule 12(b)(6) motion. The motion's legal arguments are premised entirely on SME's

5

failure to adequately plead essential elements of both Civil RICO and fraud claims as a matter of law. The deficiencies in SME's complaint are fundamentally legal, not factual, and persist even when accepting all of SME's factual allegations as true. As such, dismissal remains appropriate at this stage without the need for factual development through discovery.

## II. SME'S FRAUD CLAIMS ARE DEFICIENTLY PLED AND DO NOT STATE A CLAIM UPON WHICH THIS COURT CAN GRANT RELIEF

To establish fraud, SME must plausibly allege: (1) a material representation made by Dobronski, (2) its falsity, (3) Dobronski's knowledge of its falsity or reckless disregard for the truth, (4) intent that SME rely on the misrepresentation, (4) SME's actual reliance, and (5) resulting damages. Moreover, under Federal Rule of Civil Procedure 9(b), a plaintiff must plead the circumstances constituting fraud "with particularity." A plaintiff's complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Gupta v. Terra Nitrogen Corp.*, 10 F.Supp.2d 879, 883 (N.D.Ohio 1998). At a minimum, a plaintiff must allege the time, place, and contents of the misrepresentations upon which he or she relied. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984).

SME specifically alleges that Dobronski falsely represented (a) the existence of the Fake Patient; (b) the Fake Patient's Medicare ID; (c) ownership of the Call

Back Number by the Fake Patient; and (d) a treatment relationship between the Fake Patient and a Michigan physician. While these allegations appear superficially troubling, they fundamentally fail to state a claim because SME cannot plausibly establish critical elements of fraud—namely actual reliance and damages caused by such reliance.

Critically, SME cannot demonstrate genuine reliance, an essential element of fraud. SME's alleged "reliance" was merely its routine internal verification and regulatory compliance practices in response to customer inquiries. The purported expenses SME claims arose from standard due diligence and administrative practices required of any Medicare-compliant medical equipment provider, independent of Dobronski's representations. SME does not and cannot credibly allege that it blindly relied on Dobronski's statements, given its sophisticated verification procedures necessary to comply with Medicare and insurance regulations. Its reliance is nothing more than its routine compliance practices, which would have occurred regardless of Dobronski's actions.

Moreover, even assuming the truth of SME's primary allegation—that Dobronski deliberately invited or encouraged SME to call him back to trigger TCPA liability—this scenario still fails to establish a legally cognizable claim for Fraud. (Complaint ECF No. 1, P. 2 at ¶¶ 3,4). Fraud claims require demonstrating that the defendant intended to deceive the plaintiff into actual reliance upon a false representation, resulting in direct harm or damage. Here, SME's purported "harm"

7

stems exclusively from its own intentional violation of federal telemarketing regulations, not from any genuine reliance on Dobronski's alleged misrepresentations. Any "injury" SME experienced resulted directly from its conscious decision to make illegal calls in violation of the TCPA, rather than from actionable deceit by Dobronski.

Similarly, SME's fraud claim further fails because SME cannot plausibly allege any cognizable or reasonable reliance upon Dobronski's purported misrepresentations. Even assuming, arguendo, that SME was misled by Dobronski's use of a "canary trap" to provide false personal details, SME's alleged reliance on these statements is inherently unreasonable and legally insufficient to sustain a fraud claim. The critical element missing from SME's allegations is that under federal regulations and Medicare guidelines, SME was strictly required to have a written prescription from a licensed physician explicitly prescribing the medical equipment before any medical products could be shipped to Dobronski or billed to Medicare.

Because SME could not lawfully act upon any information provided solely by Dobronski without independently obtaining and verifying an official prescription from a medical professional, SME's claim that it relied on Dobronski's representations is legally untenable. In other words, SME's compliance obligations mandated that it independently confirm Dobronski's medical need through valid medical documentation, completely eliminating any plausible scenario where SME could rely exclusively upon verbal information provided during a telemarketing call.

8

SME's obligations under federal regulations serve as a clear intervening step that inherently negates any allegation of justifiable reliance. Consequently, SME's claim of reliance collapses under scrutiny and cannot survive dismissal under Rule 12(b)(6).

Furthermore, SME's allegations strain credulity by attempting to convert Dobronski's "canary trap," used to document SME's unlawful telemarketing, into a fraudulent misrepresentation. SME's internal processes naturally necessitated independent verification, negating the plausibility of any direct reliance on Dobronski's representations.

The attempt by SME to label Mr. Dobronski as a "serial TCPA filer" or that the "canary trap" is a fraudulent action to undermine his legitimate claims must be seen for what it truly is—an impermissible attempt to stigmatize lawful, congressionally encouraged enforcement of consumer rights. Federal courts explicitly recognize and protect private litigants who act as "private attorneys general" under the TCPA. See *Mey v. Pintas*, 734 F.Supp.3d 515, 518, 524 at fn 1 (N.D. W. Va. 2024).  The TCPA does not merely tolerate plaintiffs who proactively enforce its provisions; it actively "encourages" them to engage in precisely such enforcement activities to deter abusive telemarketing practices. Specifically, in *Mey, supra*, the court emphasized that Congress intentionally granted private citizens the authority to enforce the TCPA precisely because robust private enforcement is necessary to curb widespread telemarketing abuses. Id.

9

Moreover, the *Mey* court strongly condemned the misuse of litigation tactics—such as bringing retaliatory or vexatious lawsuits designed to intimidate or silence consumer advocates—as fundamentally antithetical to the TCPA's intended protective framework. Id. at 522 The court specifically characterized such retaliatory litigation as abusive, describing it as a strategy employed by well-financed defendants for the sole purpose of intimidating and coercing private litigants into abandoning their valid claims. Id.

Here, SME engages in exactly the type of intimidation tactics the *Mey* court rebuked. Dobronski's actions in lawfully documenting SME's repeated and unlawful telemarketing practices do not reflect abuse of litigation but rather precisely embody the behavior Congress intended to incentivize through the TCPA. His proactive measures, including the use of investigative methods ("canary traps") to identify telemarketing abuses, fall squarely within the scope of protected petitioning activities that are essential for effective consumer protection enforcement.

Thus, SME's portrayal of Mr. Dobronski as a serial litigator is not only factually irrelevant but legally unsound. His enforcement actions are encouraged, protected, and specifically intended by federal statute. SME's retaliatory allegations, therefore, cannot serve as a legitimate basis for either fraud or civil RICO claims and must be rejected outright.

Additionally, SME fails to identify cognizable damages stemming directly from reliance upon the alleged misrepresentations. The Complaint vaguely

references administrative expenses and reputational harm; however, such speculative, internal compliance or investigative costs are not the direct and foreseeable damages necessary to sustain a fraud claim. SME incurred these alleged damages because of its own internal compliance obligations, not due to reliance on any alleged falsehood by Dobronski. Thus, even accepting SME's factual allegations as true, the Complaint is legally insufficient to state actionable claims for fraud relief and must be dismissed under Rule 12(b)(6).

### III.   SME'S COMPLAINT FAILS TO ALLEGE A VALID RICO ENTERPRISE AND THEREFORE FAILS TO STATE A PLAUSIBLE CLAIM UPON WHICH THIS COURT CAN GRANT RELIEF

To sustain a Civil RICO claim, SME must plausibly allege the existence of a distinct RICO "enterprise." A Civil RICO enterprise is not simply an individual defendant or an informal collaboration among defendants—it requires a structured, ongoing organization with a distinct and separate identity from the alleged predicate racketeering acts themselves. See *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). It is well-established that an enterprise under RICO must exist independently from the alleged racketeering activity and have a separate, identifiable organizational structure, roles, and ongoing functions beyond the alleged unlawful acts. Federal courts have routinely dismissed RICO claims under similar circumstances, emphasizing that an enterprise cannot simply mirror or be synonymous with the defendant's individual conduct or ordinary business

relationships.  In *Jacovetti Law P.C. v. Shelton*, 2020 WL 5211034 (E.D. Pa. 2020) see copy attached as Exhibit A, the court dismissed a RICO claim despite allegations that the defendant had turned TCPA enforcement into a business.  The court stated that "nothing about that constitutes a RICO violation," even in the face of allegations of a party being a "serial TCPA plaintiff."  This is precisely analogous to SME's flawed attempt to paint Dobronski as a RICO enterprise. Just as in *Jacovetti*, the allegations here, that Dobronski is a serial TCPA litigant, do not equate to a RICO violation.

Moreover, even assuming the truth of SME's primary allegation—that Dobronski deliberately invited or encouraged SME to call him back to trigger TCPA liability—this scenario still fails to establish a legally cognizable RICO claim.  SME alleges that Dobronski "set them up" for TCPA liability; however, such allegations do not constitute a "scheme to defraud" under federal wire fraud statutes, which form the predicate for RICO claims.

Furthermore, Defendant Dobronski had the legal right to contact SME to make a "do not call" demand, and SME had the legal obligation to comply with that demand. 47 CFR 64.1200(d)(3) explicitly states: "(3) Recording, disclosure of do-not-call requests. If a person or entity making an artificial or prerecorded-voice telephone call pursuant to an exemption under paragraphs (a)(3)(ii) through (v) of this section or any call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls

12

from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made." Dobronski's act of calling SME to make such a demand is entirely proper under applicable law, and SME's attempt to characterize this as part of a fraudulent scheme is a misrepresentation of the legal framework.

Here, the Complaint alleges Dobronski is an "enterprise" himself or, alternatively, part of an "association-in-fact" with his wife and their limited liability company, Safe Train, LLC. This claim is fundamentally deficient because it conflates the alleged enterprise entirely with Dobronski's individual conduct and immediate familial relations without any meaningful distinction. There is no factual basis provided showing any organizational structure, distinct roles, operational hierarchy, or coordinated decision-making independent from the alleged acts of Dobronski himself. The Complaint fails to articulate any distinct and separate roles that Safe Train or Dobronski's wife undertook beyond merely being identified as associated parties. The mere fact of a familial or business relationship does not satisfy the legal threshold to constitute a RICO enterprise. SME attempts to artificially construct a RICO "enterprise" by merely labeling ordinary interpersonal or business associations as inherently criminal. Federal courts have routinely dismissed RICO claims under similar circumstances, emphasizing that an enterprise cannot simply mirror or be synonymous with the defendant's individual conduct or ordinary business relationships. SME's vague and conclusory allegations, devoid of

13

any meaningful factual specifics or organizational detail, fail entirely to satisfy the distinctiveness and structured organization elements necessary under established RICO jurisprudence.

Moreover, even assuming the truth of SME's primary allegation—that Dobronski deliberately invited or encouraged SME to call him back to trigger TCPA liability—this scenario still fails to establish a legally cognizable RICO claim. SME alleges that Dobronski "set them up" for TCPA liability; however, such allegations do not constitute a "scheme to defraud" under federal wire fraud statutes, which form the predicate for RICO claims. Wire fraud explicitly requires an intent to deceive the victim to unlawfully obtain money or property. SME's allegations, taken at face value, at best suggest Dobronski intended only to document SME's own illegal telemarketing practices, not to deceive SME into losing money or property through fraud. Courts have consistently rejected similar attempts to stretch RICO beyond its statutory intent to punish lawful consumer protection enforcement actions.    The *Jacovetti* court rejected this reasoning stating:

> Mr. Shelton investigates potential defendants before he sues them to ensure they can satisfy a judgment. That pecuniary approach to litigation might be unseemly, as the Court has observed before. But it is not illegal. Certainly, ***it does not demonstrate that Mr. Shelton intends to cheat or defraud anyone***. It only shows that he intends to collect if he prevails in litigation. At most, the Jacovetti Parties have alleged that Mr. Shelton is aggressive in his pursuit of litigation and his collection of judgments. None of that is a basis for a civil RICO claim.

Id. at P. 3 (emphasis added)

14

SME's complaint woefully short of the legal standard established in *Ouwinga v. Benistar*, 694 F.3d 783, 793-794 (6th Cir. 2012)*, which requires an ongoing organization with a framework for decision-making, members functioning as a continuing unit, and an enterprise separate from the pattern of racketeering activity. The Complaint offers no facts about Safe Train's structure, roles, or how it furthered racketeering. Vague alleged references to "schemes" with his wife (Complaint, ECF 1, P 12 at ¶53) are conclusory and lack the "framework" required under *Ouwinga*. SME provides no factual allegations showing any ongoing organization, distinct roles, or decision-making hierarchy. Merely asserting an individual acted fraudulently or identifying vague interactions among Dobronski, his wife, and Safe Train does not satisfy RICO's requirement of an "ongoing organization." Without demonstrating the existence of a genuine organizational structure or separate existence apart from the Defendant's acts, SME's claim fails at this fundamental level.

## IV. SME FAILS TO ALLEGE WIRE FRAUD AND RACKETEERING AN ESSENTIAL ELEMENT OF A CIVIL RICO ACTION AND THUS THIS COURT MUST DISMISS THE COMPLAINT

### A. SME's Rico Claim Fails To Allege Viable Predicate Acts Of Wire Fraud

To successfully assert a Civil RICO claim, a plaintiff must adequately plead the necessary predicate acts that form the basis of the racketeering activity. In this case, SME relies on wire fraud as the predicate act, but this reliance is misplaced due

to critical deficiencies in their fraud allegations. As explained in *Berent v. Kemper, Corp.*, 973 F.2d 1291, 1294, the mere use of wires is not, in and of itself, a crime absent an underlying illegal activity or fraud. Both the mail fraud and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, criminalize the use of mail or wires to execute a "scheme or artifice to defraud." These statutes are explicitly included in RICO's definition of "racketeering activity" under 18 U.S.C. § 1961(1)(B). Therefore, to survive a motion to dismiss, SME's complaint must sufficiently plead the underlying fraud with the requisite particularity.

Courts have consistently held in RICO cases involving mail or wire fraud as predicate acts that the underlying fraudulent activities must be pleaded with specificity. This stringent standard is rooted in Federal Rule of Civil Procedure 9(b), which mandates particularity in pleading fraud. Courts have routinely dismissed RICO actions where plaintiffs fail to assert factual allegations detailing the time, place, subject matter, and the precise individuals involved in the purportedly fraudulent statements. As illustrated in cases such as *Saporito v. Combustion Engineering, Inc.*, 843 F.2d 666, 673 (3rd Cir.1988) and *Van Dorn Co. v. Howington*, 623 F.Supp. 1548 (N.D.Ohio 1985) general allegations of fraud are insufficient. The plaintiff must provide specific details about the alleged misrepresentations.

For instance, in *Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir.1984), the Sixth Circuit affirmed the dismissal of RICO claims because the plaintiff failed to allege the time, place, and contents of the specific

misrepresentations relied upon. Similarly, in *Saporito*, the Third Circuit affirmed the dismissal of a RICO complaint due to the plaintiff's failure to specifically identify the individuals who made the fraudulent statements. In *Bhatla v. Resort Development Corp.,* 720 F.Supp. 501 (W.D.Pa.1989*)*, despite being granted multiple opportunities to amend, the plaintiff still failed to plead with specificity who made the representations, leading to the dismissal of the RICO claims.

Courts have been particularly sensitive to Rule 9(b)'s pleading requirements in RICO cases where the predicate acts are mail or wire fraud. This sensitivity extends to requiring specific allegations about which defendant caused what to be mailed or which telephone calls were made, as well as when and how each mailing or call furthered the fraudulent scheme. As seen in *Berent v. Kemper Corp*., *supra*, *Bennett v. Berg*, 685 F.2d 1053 (8th Cir.1982), *cert. denied*, 464 U.S. 1008, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983), and *Barker v. Underwriters at Lloyd's, London*, 564 F.Supp. 352, 356 (E.D.Mich.1983), the need for detailed factual assertions is paramount.  In *Otto v. Variable Annuity Life Ins*. Co., 611 F.Supp. 83 (N.D.Ill.1985), the court dismissed a RICO Section 1962(c) count because the plaintiff failed to plead each defendant's involvement in the alleged fraud as required by Rule 9(b).

In SME's complaint, they fail to provide the granularity of detail mandated by Rule 9(b) and established RICO precedent regarding wire fraud predicate acts. By relying on general accusations rather than specific facts concerning the "scheme to

defraud" element, SME falls short of the pleading standards required for a viable RICO claim based on wire fraud.

**B.   SME has Failed To Allege That Dobronski Engaged In A  Scheme To Defraud SME Out Of Money Or Property**

Civil RICO requires allegations of at least two predicate acts of racketeering activity as defined by 18 U.S.C. § 1961(5). SME alleges wire fraud as the predicate acts, but these allegations fall critically short. The Complaint alleges Defendant used aliases and false Medicare information to "catfish" Plaintiff into calling a "do not call" number (Complaint ECF 1, Pp. 4-6  at ¶¶12–27). However, there is no allegation that Defendant sought to obtain money or property through deception— the hallmark of fraud. Instead, the purported "scheme" was to invite TCPA liability, which is not inherently fraudulent. See *Jacovetti, supra*.

Wire fraud under 18 U.S.C. § 1343 requires that SME plausibly plead (1) a scheme to defraud, (2) intent to defraud, and (3) use of interstate wires in furtherance of that scheme. *United States v. Prince*, 214 F.3d 740, 747–48 (6th Cir. 2000). Critically, wire fraud requires an intent to wrongfully obtain money or property through deceit. SME alleges that Dobronski provided false details to provoke callbacks in violation of the TCPA. However, this conduct does not amount to a scheme to defraud SME of money or property. At most, SME alleges that Dobronski intended to create grounds for TCPA litigation; however, as established in *BE&K Constr. Co. v. NLRB*, 536 U.S. 516, 531–32 (2002), pursuing litigation—even

18

strategically—is protected unless objectively baseless and subjectively malicious. SME has failed to plausibly plead these necessary fraud elements under Rule 9(b), as it does not specify with particularity the precise fraudulent statements or demonstrate how these statements were intended to deceive SME out of money or property.

Here, SME's Complaint itself admits that Dobronski's call-back number was indeed listed on the "do not call" registry, thereby implicitly acknowledging that Dobronski had legitimate grounds to assert TCPA violations. SME alleges no facts demonstrating Dobronski's previous TCPA claims were baseless or abusive litigation. Thus, Dobronski's purported actions constitute legally protected petitioning, not fraudulent racketeering activity.

### III.   SME HAS NOT ALLEGED A RICO "PATTERN" OF RACKETEERING ACTIVITY ANOTHER ESSENTIAL ELEMENT OF A CIVIL RICO ACTION AND THUS THIS COURT MUST DISMISS THE COMPLAINT

A "pattern" under RICO requires showing predicate acts that are both related and continuous. *H.J. Inc. v. Nw. Bell Tel. Co*., 492 U.S. 229, 239 (1989). SME's allegations reflect only a singular, isolated event—Defendant's interactions with SME in February 2025. There is no plausible allegation of continuity or relatedness involving any conduct beyond this limited series of calls.

In the same vein as the *Jacovetti* case or the *Mey* case, *supra*, the Complaint's passing reference to "dozens of lawsuits" filed by Dobronski provides no specific

information regarding other predicate acts, victims, or how those separate occurrences might constitute a cohesive, ongoing pattern involving SME. Short-term conduct directed solely at one alleged victim is legally insufficient under RICO's continuity requirement, as confirmed in *Vemco, Inc. v. Camardella*, 23 F.3d 129, 134 (6th Cir. 1994). Thus, the Complaint's vague allegations about past litigation do not satisfy the pattern requirement. Moreover, RICO defines "racketeering activity" as any *act indictable under several provisions of Title 18 of the United States Code*, including predicate acts such as mail fraud, wire fraud, and obstruction of justice. Thus, even assuming that Dobronski is a "serial" TCPA claimant how does that constitute a "pattern" of racketeering activity--racketeering activity *is illegal conduct*—filing lawsuits and prevailing under Federally promulgated statutes is not legally prohibited conduct and cannot, as a matter of law, constitute a pattern of racketeering activity.

## IV.   SME'S CLAIMS IMPERMISSIBLY TARGET PROTECTED TCPA ENFORCEMENT ACTIVITY AND THUS MUST BE DISMISSED

The *Noerr-Pennington* doctrine "is a rule of statutory construction that requires courts to construe statutes to avoid burdening conduct that implicates the protections of the Petition Clause of the First Amendment." *United States v. Koziol*, 993 F.3d 1160, 1171 (9th Cir. 2021). That clause protects "the right of the people . . . to petition the government for a redress of grievances." Id. (*quoting* U.S. Const. amend. I). The *Noerr-Pennington* doctrine, which originated in antitrust law, has

20

been expanded to protect against various tort claims and even RICO claims, as held by the Ninth Circuit in *Sosa v. DIRECTV, Inc*., 437 F.3d 923, 930 (9th Cir. 2006). This doctrine immunizes those who petition any department of the government for redress from statutory liability for their petitioning conduct. Courts have since extended *Noerr* protection to lawsuits, noting that the doctrine "overprotects baseless petitions so as to ensure citizens may enjoy the right of access to the courts without fear of prosecution." *Sosa*, 437 F.3d at 934.

The *Noerr-Pennington* doctrine provides a robust shield for Dobronski's actions, rendering SME's claims legally untenable. Established by the U.S. Supreme Court in *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc*., 365 U.S. 127; 81 S. Ct. 523; 5 L. Ed. 2d 464 (1961) and *United Mine Workers of America v. Pennington*, 381 U.S. 657; 85 S. Ct. 1585; 14 L. Ed. 2d 626 (1965), this doctrine protects efforts to influence governmental action through litigation, lobbying, and similar activities under the First Amendment. Such activities are immunized from liability, including under RICO and state-law claims like fraud, provided they are not a mere "sham."

To overcome *Noerr-Pennington* immunity, SME must first prove that Dobronski's potential TCPA claim against SME is "objectively baseless in the sense that no reasonable person could realistically expect success on the merits." However, SME's own complaint acknowledges that Dobronski's number was on the do-not-call registry, providing a legitimate basis for potential TCPA claims. This

admission fundamentally undermines any argument that Dobronski's actions were objectively baseless, thus entitling him to *Noerr-Pennington* immunity as a matter of law.

The application of the *Noerr-Penni*ngton doctrine in this case is a purely legal question that can be resolved based on the pleadings alone. SME has failed to allege any facts that would suggest Dobronski's potential TCPA claims are objectively baseless. On the contrary, the facts presented in the complaint support the legitimacy of such claims.

Given the insurmountable barrier posed by the *Noerr-Pennington* doctrine and SME's failure to plead facts that would overcome this immunity, dismissal of SME's claims is not only appropriate but necessary to protect the fundamental right to petition the government for redress of grievances. This case is not merely a dispute over a few phone calls; it represents a larger battle between a powerful corporation leveraging its resources to silence individual accountability and a private citizen seeking to enforce consumer protection laws. This baseless action demonstrates a deliberate attempt to intimidate Dobronski and others from exercising their rights under the TCPA, thereby subverting the very purpose of the statute.

## REQUEST FOR RELIEF

This case is not merely a dispute over a few phone calls; it represents a larger battle between a powerful corporation leveraging its resources to silence individual accountability and a private citizen seeking to enforce consumer protection laws.

22

SME, a company whose business model hinges on aggressive telemarketing practices (as evidenced by the detailed allegations within this complaint), has responded to Dobronski's efforts to document and challenge these practices not with corrective action but with this preemptive lawsuit. This baseless action demonstrates a deliberate attempt to intimidate Dobronski and others from exercising their rights under the TCPA, thereby subverting the very purpose of the statute. As amply demonstrated above, SME has no cognizable claim against Dobronski for Civil Rico or fraud. As the *Jacovetti* echoed relating to the analogous arguments made by the Plaintiff in that case:

> None of that is a basis for a civil RICO claim. To the extent they view this case as a way to dispute the facts from the TCPA Action, it is not that, either. A RICO claim is a serious charge that requires serious facts. Those are lacking here.

*Jacovetti, supra* at *3.

For the foregoing reasons, SME's Complaint fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). The RICO and fraud claims are fundamentally deficient, lacking essential elements required by law. SME has failed to plausibly allege a valid RICO enterprise, predicate acts of racketeering, or a pattern of racketeering activity. Similarly, the fraud claims fall short of establishing actual reliance or cognizable damages. Moreover, SME's allegations impermissibly target protected TCPA enforcement activity shielded by the *Noerr-Pennington* doctrine.

23

Given these insurmountable legal deficiencies, which persist even when accepting SME's factual allegations as true, dismissal at this stage is not only appropriate but necessary. The current lawsuit represents a predictable consequence of SME's pervasive and potentially unlawful business model. Rather than addressing its history of violating consumer protection laws, SME has chosen to retaliate against Dobronski, who is simply exercising his legal right to pursue redress.  Therefore, this Court should dismiss the Complaint to prevent the chilling of legitimate TCPA enforcement efforts and to safeguard the rights of consumers to challenge unlawful telemarketing practices.

<div style="margin-left:50%">

Respectfully submitted,

WEISMAN, YOUNG &
RUEMENAPP, P.C.

/s/ David E. Sims
By:    David E. Sims (P41636)
Attorneys for Def. Mark Dobronski
Email:  dsims@wyrpc.com

</div>

Dated: March 27, 2025

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\SME v Dobronski-12(B)(6) Brief in Support-2.docx

## CERTIFICATE OF SERVICE

I hereby certify that on March 27, 2025, I electronically filed **Defendant Mark Dobronski's  Motion To Dismiss Plaintiff's Complaint Pursuant To FRCP 12(B)(6) and Brief in Support of Defendant Mark Dobronski's  Motion To Dismiss Plaintiff's Complaint Pursuant To FRCP 12(B)(6)** with the Clerk of the Court using MIFile ECF system which will send notification of such filing to the following participant:

**Robert Dindoffer, Esq. @ [rdindoffer@thehlp.com](mailto:rdindoffer@thehlp.com)**

Respectfully submitted,

WEISMAN, YOUNG & RUEMENAPP, P.C.

/s/ David E. Sims
By:    David E. Sims (P41636)
Attorneys for Def. Mark Dobronski
Email:  [dsims@wyrpc.com](mailto:dsims@wyrpc.com)

Dated: March 27, 2025

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\SME v Dobronski-12(B)(6) Brief in Support-2.docx

# EXHIBIT A

2020 WL 5211034
Only the Westlaw citation is currently available.
United States District Court, E.D. Pennsylvania.

JACOVETTI LAW, P.C., et al., Plaintiffs,
v.
James Everett SHELTON, et al., Defendants.

Case No. 2:20-cv-00163-JDW
|
Signed 09/01/2020

**Attorneys and Law Firms**

Joshua Louis Thomas, Joshua L. Thomas & Associates
PLLC, Chadds Ford, PA, for Plaintiffs.

Bryan Anthony Reo, Reo Law LLC, Mentor, OH, Clayton
S. Morrow, Morrow & Artim, P.C., Pittsburgh, PA, for
Defendant James Everett Shelton.

Bryan Anthony Reo, Reo Law LLC, Mentor, OH, for
Defendant Final Verdict Solutions.

## MEMORANDUM

JOSHUA D. WOLSON, J.

**\*1** Civil **RICO** might be the "litigation equivalent of a
thermonuclear device,"[1] but this case is a dud. The Jacovetti
Parties[2] have not alleged predicate acts to support their
**RICO** claim. At best, they have alleged that James Everett
Shelton has turned enforcement of the **Telephone Consumer
Protection Act** into a business and that he takes pecuniary
considerations into account when he decides who to sue.
Nothing about that constitutes a **RICO** violation. The Court
will therefore grant the FVS Parties'[3] motion to dismiss the
complaint with prejudice.

## BACKGROUND

### A. Mr. Shelton's TCPA Enforcement Activity

James Shelton has turned the private right of action under the
TCPA into a business. He has filed dozens of cases in this
District and in other districts around the country. The Jacovetti
Parties claim to have transcripts of Mr. Shelton discussing
his approach to TCPA litigation, including (a) the amount

that he expects to extract in settlements and (b) his pre-suit
research into potential defendants' ability to pay a judgment.
According to the Jacovetti Parties, Mr. Shelton talks with
other serial TCPA plaintiffs.

### B. The TCPA Case

Mr. Shelton sued the Jacovetti Parties and FCS Capital LLC,
Emil Yashayev, and Barry Shargel (the "FCS Parties") in
*Shelton v. FCS Capital LLC, et al.*, No. 2:18-cv-3723 (the
"TCPA Case"). His initial complaint in that case named only
the FCS Parties. He filed an amended complaint that added
the Jacovetti Parties. When the defendants in the case did not
respond to the complaint, Mr. Shelton sought and obtained
a default. The Court vacated the default. Mr. Shelton then
withdrew his claims against the Jacovetti Parties.

The Jacovetti Parties claim that Mr. Shelton's claims against
them were a "setup for the sole purpose of extracting as [sic]
settlement."[4] They contend that the facts in Mr. Shelton's
complaint were inaccurate. They speculate that a former
employee might have engaged in some of the conduct to
retaliate against them for firing him. They also claim that Mr.
Shelton's amended complaint contained factual errors.

The TCPA Case proceeded against the FCS Parties. The
FCS Parties did not respond to discovery in that case. Then,
they did not respond to a summary judgment motion. On
December 11, 2019, the Court granted the summary judgment
motion. Since then, the FCS Parties have twice asked the
Court to reconsider its decision. The Court has denied both
of their attempts, and they have appealed the most recent
decision. In addition, they have tried to avoid discovery in aid
of execution in that case.

### C. Procedural History of This Case

On January 9, 2020, the FCS Parties and the Jacovetti Parties
filed this case against the FVS Parties and Dan Boger. On
January 27, 2020, the Court ordered Jacovetti Law and FCS
Capital to file corporate disclosure statements by February 3,
2020. Neither did. They also ignored an Order to Show Cause
in which the Court instructed them to explain why they did
not comply. That odyssey ended with the Court sanctioning
Plaintiffs' counsel Joshua Thomas for his repeated failure to
comply with deadlines and Court orders.

**\*2** The FVS Parties answered the complaint on February
10, 2020. On February 11, 2020, the FVS Parties moved
for judgment on the pleadings. Neither the Jacovetti Parties

Case 2:25-cv-10664-MAG-CI ECF No. 4, PageID.56 Filed 03/27/25 Page 35 of 37

Jacovetti Law, P.C. v. Shelton, Not Reported in Fed. Supp. (2020)

nor the FCS Parties responded, so the Court granted the Motion as unopposed on February 27, 2020. On March 6, 2020, the Jacovetti Parties and FCS Parties filed a motion asking the Court to re-open the case and to permit them to file an amended complaint. On April 27, 2020, the Court granted that motion. The Amended Complaint drops the FCS Parties from the case and states claims only on behalf of the Jacovetti Parties. In Count I, the Amended Complaint asserts a violation of **RICO** through a pattern of wire fraud. It does not specify which section of **RICO** is at issue. Count II asserts a separate claim for wire fraud under 28 U.S.C. § 1343.

On May 11, 2020, the Jacovetti Parties filed a **RICO** Case Statement. In their Case Statement, they explain that they assert claims for violations of 18 U.S.C. §§ 1962(a) and (d). They describe the predicate acts as violations of the mail and wire fraud statutes. They posit the existence of an association-in-fact as the illegal enterprise. They claim as damages the attorneys' fees that the Jacovetti Parties paid to defend the TCPA Case. On May 21, 2020, the FVS Parties filed a motion to dismiss the claims against them.

### STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[5] A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[6] A conclusory recitation of the elements of a cause of action is not sufficient. Instead, the plaintiff must allege facts necessary to make out each element of the claim. In other words, the complaint must contain facts that, if proven later, support a conclusion that a cause of action can be established.[7]

To determine the sufficiency of a complaint, the Court must take the following three steps: (1) the Court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify the allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.[8] Where, as here, a plaintiff bases a **RICO** claim on mail or wire fraud, it must plead with particularity the circumstances of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior.[9]

### ANALYSIS

In the Amended Complaint, the Jacovetti Parties assert claims arising under "18 U.S.C. § 1962(a)-(c)."[10] In the **RICO** Case Statement, they say that their claims arise under Sections 1962(a) and (d). All of those statutory subsections require proof of a pattern of **racketeering** activity. **RICO** defines "**racketeering** activity" as any of a series of specified criminal acts, including mail and wire fraud.[11] The elements of mail and wire fraud are (1) "a scheme or artifice to defraud for the purpose of obtaining money or property," (2) "participation by the defendant with specific intent to defraud," and (3) "use of the mails or wire transmissions in furtherance of the scheme."[12] The scheme to defraud "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension."[13]

**\*3** The FVS Parties' motion to dismiss challenges the Amended Complaint's allegations of **racketeering** activity, although it is not a model of clarity in its argument. Under a heading about a "common law judicial proceedings privilege," the FVS Parties argue to a significant degree about Pennsylvania state law's judicial proceedings privilege. The Court has already rejected the applicability of that doctrine in this case,[14] so it is not clear why the FVS Parties persist with the argument. However, within that argument, the FVS Parties argue on several occasions that their litigation conduct does not constitute a predicate act for **RICO** purposes.[15] These arguments suffice to raise the question. The Jacovetti Parties do not respond at all. However, the Court does not treat the Jacovetti Parties as having conceded the issue. Instead, the Court has analyzed it for itself.

The Court concludes that the Amended Complaint does not allege **racketeering** activity. The Amended Complaint primarily disputes the facts that Mr. Shelton alleged in the TCPA Action. But even if Mr. Shelton made incorrect allegations in the TCPA Action, that litigation conduct does not constitute a scheme or artifice to defraud because absent

Jacovetti Law, P.C. v. Shelton, Not Reported in Fed. Supp. (2020)

corrupt activity like bribing witnesses or parties, litigation conduct does not constitute a scheme or artifice to defraud for purposes of a civil **RICO** case. [16]

The Amended Complaint also points to transcripts of conversations in which Mr. Shelton discussed his litigation strategy. Those conversations demonstrate that Mr. Shelton investigates potential defendants before he sues them to ensure they can satisfy a judgment. That pecuniary approach to litigation might be unseemly, as the Court has observed before. But it is not illegal. Certainly, it does not demonstrate that Mr. Shelton intends to cheat or defraud anyone. It only shows that he intends to collect if he prevails in litigation.

At most, the Jacovetti Parties have alleged that Mr. Shelton is aggressive in his pursuit of litigation and his collection of judgments. None of that is a basis for a civil **RICO** claim. To the extent they view this case as a way to dispute the facts from the TCPA Action, it is not that, either. A **RICO** claim is a serious charge that requires serious facts. Those are lacking here. Because there is no way for the Jacovetti Parties to cure that failure, and because they have already had an opportunity to amend their complaint, the Court will dismiss their claims with prejudice. An appropriate Order follows.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 5211034

## CONCLUSION

---

### Footnotes

1    *E.g., Turner v. New York Rosbruch/Harnik, Inc.*, 84 F. Supp.3d 161, 167 (E.D.N.Y. 2015).

2    The "Jacovetti Parties" refers to Plaintiffs Robert Jacovetti and Jacovetti Law, P.C.

3    The "FVS Parties" include Mr. Shelton and Defendant Final Verdict Solutions.

4    ECF No. 36 at ¶ 13.

5    *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) **(quote omitted)**.

6    *Id.*

7    *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

8    *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2010).

9    *See Federico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

10    ECF No. 39 at ¶ 8.

11    *See* 18 U.S.C. § 1961(1).

12    *Nat'l Sec. Sys. V. Iola*, 700 F.3d 65, 105 (3d Cir. 2012).

13    *Walter v. Palisades Collection, LLC*, 480 F. Supp.2d 797, 803 (E.D. Pa. 2007) **(quoting** *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978)).

14    ECF No. 33 at 3-4.

15    ECF No. 46 at 10 ("Plaintiffs incorrectly allege that the sending of pre-suit settlement offers, engaging in pre-litigation discussion or investigation with the alleged TCPA violator(s), and/or the use of litigation can constitute a **RICO** violation."); *id.* at 13 ("To the extent that Plaintiffs claim that Mr. Shelton sued for 'fabricated claims', such conduct would not constitute an actionable **RICO** violation.").

16    *See* *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018); *Snow Ingredients, Inc. v. SnoWizard, Inc.*, 833 F.3d 512, 525 (5th Cir. 2016); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1087-88 (11th Cir. 2004); **Deck v. Engineered Laminates**, 349 F.3d 1086, 1087-88 (10th Cir. 2003); *Feld Entn't Inc. v. Am. Soc. For the Prevention of Cruelty to Animals*, 873 F. Supp.2d 288, 318 (D.D.C. 2012); *Luther v. AM. Nat. Bank of Minn.*, Civ. No. 12-1085, 2012 WL 5471123, at * 6 (D. Minn. Oct. 11, 2012) (collecting cases).

End of Document                                    © 2025 Thomson Reuters. No claim to original U.S. Government Works.