UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALTY  MEDICAL  EQUIPMENT,
INC.,

      Plaintiff,

Case No. 2:25-cv-10664-MAG-CI
Hon. Mark A. Goldsmith
Magistrate Curtis Ivy, Jr.

*v*

MARK DOBRONSKI,

      Defendant.

_____/

Robert Dindoffer, Esq. (P72319)
The Health Law Partners, P.C.
32000 Northwestern Hwy, Ste 240
Farmington Hills, MI 48334
248-996-8510
rdindoffer@thehlp.com

David E. Sims, Esq. (P41636)
Weisman, Young & Ruemenapp, P.C.
dsims@wyrpc.com

_____/

**PLAINTIFF'S BRIEF IN OPPOSITION TO**

**DEFENDANT DOBRONSKI'S MOTION TO DISMISS PLAINTIFF'S
COMPLAINT PURSUANT TO FRCP 12(B)(6)**

## **<u>Counter-Statement of Questions Presented</u>**

Whether the Plaintiff's First Amended Complaint ("Complaint," ECF 6) alleges facts that—taken as true—could plausibly support a cause of action for fraud against the Defendant, when the Defendant initiated telephone communications with Plaintiff and requested a call-back while using a false identity for the purposes of pursuing claims under the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA") while seeking to avoid a defense based upon the Defendant having consented to the call-back telephone communication?

 Plaintiff says "Yes"

 Defendant says "No"


Whether the Complaint alleges facts that—taken as true—could plausibly support a cause of action for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO") on the basis of wire fraud, 18 U.S.C. § 1343, against the individual Defendant, when the Defendant has engaged in a pattern of attempts to generate similar, bad-faith TCPA claims in connection with his enterprise, including Safe Train, LLC?

 Plaintiff says "Yes"

 Defendant says "No"


Whether the Defendant is precluded from reliance on the *Noerr-Pennington* doctrine due to his attempt to generate "sham" litigation claims when, as alleged in the Complaint, Defendant fraudulently disguised his identity while requesting a call-back such that he could later falsely claim that Plaintiff's call to Defendant was uninvited?

 Plaintiff says "Yes"

 Defendant says "No"

## Most Controlling Authority

- Fed. R. Civ. P. 12(b)(6) – Motion to Dismiss standard claimed in Defendants' Motion to Dismiss.

- *Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 212 (6th Cir. 2024) – Describing Standard of Review for Motion to Dismiss and describing Supreme Court standards in additional detail.

- *Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.*, 648 F.3d 452, 458 (6th Cir. 2011) – Describing Standard of Review for Motion to Dismiss and distinguishing "plausibility" standard from "probability" standard.

- *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S. Ct. 2087, 2091, 150 L. Ed. 2d 198 (2001) – Holding that for purposes of RICO pleading, an individual owner of a sole or closely-held business entity is a "person" distinct from the business entity "enterprise," and sufficiently distinct to support RICO claims.

- *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 616 (6th Cir. 2009) – Holding that Noerr-Pennington doctrine and Petition Clause of First

Amendment are inapplicable to protect claims in litigation (or anticipated litigation) based upon intentional false representations of fact.

**Introduction and Facts**

This civil action seeks damages for civil (common law) fraud, as well as wire fraud (18 U.S.C. § 1343), and for violation of RICO (18 U.S.C. § 1964(c)). As alleged in the Complaint, the Defendant, Mark Dobronski, is a serial TCPA plaintiff, who, in seeking to establish new claims and lawsuits under the TCPA, has crossed the line and committed fraud. He has undertaken a pattern of initiating telephone contact with unsuspecting companies and using false identities to invite call-backs to telephone numbers that he has registered on the do-not-call list. The purpose of using a false identify to invite call-backs is to "disguise himself . . in order to deceive businesses to make such call-backs and later falsely claim that such calls were uninvited." Complaint at ¶7. In so doing, he has sought to avoid legal defenses based upon the fact that he consented to and invited call-backs from his target TCPA defendants.

In this specific case, Mr. Dobronski initiated a telephone call with Plaintiff ("SME") on February 3, 2025, in which he invited a call-back to a restricted telephone number while utilizing a false identity. Complaint at ¶¶11-17. SME did call-back Mr. Dobronski the following day. Complaint at ¶18. IN this way, Mr. Dobronski was able to entrap SME into making an invited call that Mr. Dobronski could claim was uninvited in order to pursue a TCPA claim.

The fundamental problem with Mr. Dobronski's scheme is that it is based in fraud from the initiating call and seeks to establish sham litigation.  And his attempt to establish sham litigation and his underlying fraud have damaged SME by, inter alia, causing SME to incur administrative expense in setting-up a supply relationship based on a lie and incur significant legal fees and administrative expense to defend itself against the anticipated sham TCPA lawsuit.  Complaint at ¶¶44-45.

Defendant's Motion to Dismiss[1] (ECF 8) fails because each of Plaintiff's claims are well pled.  Perhaps as a result, Defendant's Moton to Dismiss fundamentally misconstrues the nature of the fraud/wire fraud that is alleged in the Complaint.  Defendant's Motion reads as-if SME, rather than, Mr. Dobronski, initiated contact.  Defendant's Motion mischaracterizes Mr. Dobronski's actions as an attempt to pursue rights under the TCPA.  But that is not what is alleged in the Complaint.  It is clear from the Complaint that the first contact was initiated by Mr. Dobronski.  Complaint at ¶11. This initial contact was intended by Mr. Dobronski as a subterfuge to fraudulently set-up a sham TCPA claim.  Complaint at ¶7. These are <u>not</u> protected actions by Mr. Dobronski and his actions <u>do</u> give rise to

---

[1] As referred to herein, the Defendant's Motion to Dismiss and associated Brief may be referred to collectively as a single document because the Motion and Brief were filed as a single document.

well-pled allegations of fraud/wire fraud/RICO liability. Accordingly, Defendant's

Motion to Dismiss should be denied.

## **Standard of Review**

In reviewing a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6), the Court

is asked to accept all facts pled in the Complaint as true and determine whether a

plausible cause of action has been alleged on that basis. The Sixth Circuit has

described the standards as follows:

> To defeat a motion to dismiss, a plaintiff must plead "sufficient
> factual matter, accepted as true, to 'state a claim to relief that is
> plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. 662, 678, 129
> S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v.
> Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929
> (2007)). If a "plaintiff pleads factual content that allows the court to
> draw the reasonable inference that the defendant is liable for the
> misconduct alleged," then the claim is facially plausible. Id. In
> determining whether a complaint is facially plausible, "we construe
> the ... complaint liberally, in plaintiff's favor, accepting all factual
> allegations as true and drawing all reasonable inferences in favor of
> the plaintiff." Logsdon v. Hains, 492 F.3d 334, 340 (6th Cir. 2007).

*Johnson v. Parker-Hannifin Corp.*, 122 F.4th 205, 212 (6th Cir. 2024). The Sixth

Circuit has further explained that the allegations as pled need merely be plausible

and need not rise to the level of probable:

> However, *Twombly* insists that pleadings be plausible, not probable.
> *Iqbal,* 129 S.Ct. at 1949 ("[T]he plausibility standard is not akin to a
> probability requirement."); *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955
> (holding that plaintiffs can **"proceed even if it strikes a savvy judge**

7

**that actual proof of those facts is improbable, and that a recovery is very remote and unlikely"** (internal quotation marks omitted)). Often, defendants' conduct has several plausible explanations. Ferreting out the most likely reason for the defendants' actions is not appropriate at the pleadings stage.

<u>Watson Carpet & Floor Covering, Inc. v. Mohawk Indus., Inc.</u>, 648 F.3d 452, 458 (6th Cir. 2011)

In deciding a Motion to Dismiss under Rule 12(b)(6), the Court is generally prohibited from reviewing allegations of fact and documents beyond those referenced or reasonably inferred from the pleadings. *See* Fed. R. Civ. P. 12(d). This is important as Defendant's Motion to Dismiss makes numerous factual allegations beyond those pled in the Complaint, and, in fact, even attaches extraneous exhibits not referenced in the Complaint.

## Law and Argument

### I. SME has Properly Alleged Fraud (Count I) and Met the Pleading Standards of Rule 9(b)

For purposes of this Brief, Plaintiff agrees with Defendant as to the list of elements required under Michigan common law and Fed. R. Civ. P. 9(b) to plead a cause of action for fraud. As will be described more fully below, Plaintiff has properly pled each of these elements.

The Parties agree that the elements of a civil fraud claim under Michigan law are (1) a material misrepresentation by Dobronski, (2) its falsity, (3) Dobronski's knowledge of its falsity or reckless disregard for the truth, (4) intent that SME rely on the misrepresentation, (4) SME's actual reliance, and (5) resulting damages.  These elements have all been properly pled in the Complaint, including, but not limited to, in the following ways:

- Material misrepresentations made by Mr. Dobronski include his use of a false identify and representation that the "Fake Patient" existed, the False Medicare ID provided by Dobronski, that the Fake Patient was the owner of the Call Back Number, that the Fake Patient lived in a residence in Michigan, that the Fake Patient suffered from health conditions (diabetes and need for a CPAP machine), and that Fake Patient wished to form a relationship with SME.  *See*, *e.g.,* Complaint at ¶37(A) – (G).

- These representations were false and the Fake Patient never existed. *Id.; see, also,* Complaint at ¶¶ 11 – 18, 38.

- Mr. Dobronski knew that these representations were false because he was the one who fabricated the existence of the false patient in his phone calls commencing on February 3, 2025.  *Id.* at ¶¶ 11-18, 39.

- Mr. Dobronski intended that SME rely on his misrepresentations, *inter alia,* to make a call-back to his protected telephone number and pretend that the same was uninvited.  *Id.* at 7, 41.

- SME did rely on the false representations and did call the Call-Back Number as Mr. Dobronski intended.  *Id.* at 22, 42.

- SME has incurred damages as the result of its reliance, including, but not limited to administrative costs in attempting to establish a new patient under false pretenses, significant pre-litigation legal and administrative expenses resulting from SME being compelled to investigate and prepare to defend itself against the anticipated sham TCPA lawsuit that Mr. Dobronski sought to set-up with his fraudulent scheme, and humiliation and embarrassment resulting from communications with third parties, including the alleged treating physician for the Fake Patient.  *Id.* at 45 – 46.

Likewise, each of the requirements of Rule 9(b) are also met.  Plaintiff does not contest that Rule 9(b) requires the following:  (1) that the Complaint specify the statements that the Plaintiff contends were fraudulent; (2) that the Complaint identify the speaker; (3) that the Complaint state where and when the statements were made; and (4) that the Complaint explain why the statements were fraudulent. The Complaint identifies which statements are fraudulent in several places, but

most succinctly in Paragraphs 37(A) – (G), as well as in Paragraphs 11 – 18.  The Complaint identifies Mr. Dobronski as the speaker, albeit while falsely posing as the Fake Patient.  *Id.*  The Complaint specifies the statements were made during telephone calls from Mr. Dobronski from a Michigan or Florida telephone to a call center in Texas on February 3 and 4, 2025.  *Id.* at ¶¶  11 – 18.  The Complaint further describes how the statements are fraudulent, which elements are already summarized, above.

Despite the fact that the Complaint pleads all of these elements, Defendant's Motion/Brief attempt to create a "straw-man" argument to suggest that Plaintiff did not have cognizable reliance.  To be clear, Plaintiff's reliance as set forth in the Complaint was that it (a) expended staff time on verifying a Fake Patient under false pretenses and (b) called back a prospective patient at the Call-Back Number for further verification once that Medicare verification was unsuccessful.  This is an ordinary process to check/verify information.  However, Mr. Dobronski used that to his advantage to set-up a sham TCPA claim because the call-back to the Call-Back number—and his planned sham TCPA lawsuit predicated on that call-back—were Mr. Dobronski's goals all-along.

Furthermore, Plaintiff has not claimed that it was somehow damaged by filling an order for items/services for the Fake Patient.  Plaintiff has been damaged by the results from being tricked into calling Mr. Dobronski's restricted phone

number due to Mr. Dobronski's own lies.  It is irrelevant that Plaintiff would have found that the Fake Patient had the wrong Medicare ID, except that such fact further led Plaintiff to call-back the Call-Back Number for further verification and fall for Mr. Dobronski's trick.  The foreseeable downstream result is that SME expended legal fees and administrative time/expense in order to research TCPA requirements, research Mr. Dobronski and his enterprise, and take such other actions as have been necessary to protect itself against the intended bad-faith lawsuit that SME reasonably anticipated.

Finally, Defendant's reliance on *Mey v. Pintas, 734 F.Supp.3d 515 (N.D. W. Va. 2024)* is also misplaced.  In the *Mey* case, the Plaintiff alleged that the Defendant law firm initiated the first contact with her with an "unsolicited call[.]" *Id.* at 518.   In contrast, in the instant case, Mr. Dobronski was the individual who initiated the first contact.  Complaint at ¶¶11 – 13.

Additionally, the *Mey* case involved complicated issues related to personal jurisdiction—and fair litigation tactics in-general—resulting from a law firm that allegedly violated the TCPA initiating a pre-emptive lawsuit in the District of Puerto Rico, which is a jurisdiction that had no contacts with Ms. Mey or the telephone calls that were at-issue.  It is also a District in which filings are made in Spanish, which added to a sense of unfairness.  In contrast, the instant case has been initiated in the home District of the Plaintiff, which is also a District in which

the Defendant, Mr. Dobronski, has filed numerous lawsuits as a TCPA Plaintiff—and all pleadings are written in English.

Finally, nothing from the *Mey* opinion indicates that that case involved allegations of fraud or wire fraud against Ms. Mey.  This is an important distinction because the *Mey* opinion solely discusses the propriety of lawsuits that affirmatively seek declaratory judgement as to non-liability of prospective TCPA defendants, without asserting a viable cause of action against the prospective TCPA plaintiff.  In the instant case, however, SME has asserted that Mr. Dobronski committed actionable fraud and such allegations are well-pled.

**II.    SME has Properly Pled its Cause of Action under RICO (Count II) based on Wire Fraud**

**A.    SME has Properly Pled that an Enterprise Exists for RICO Purposes.**

Plaintiff has properly alleged that Mr. Dobronski was working on behalf of Safe Train, LLC, which is an "enterprise" under RICO.  The United States Supreme Court has held that a closely-held-- a closely-held business entity—and, indeed, even a single-owner company--can be deemed an "enterprise" distinct from its sole-owner under RICO.  *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163, 121 S. Ct. 2087, 2091, 150 L. Ed. 2d 198 (2001).

In the Complaint, Plaintiff's RICO allegations assert that Mr. Dobronski is the "person" who committed the predicate act of wire fraud and alleges that, *inter alia,* Safe Train, LLC, is an "enterprise."  Paragraph 23 of the Complaint identifies that Mr. Dobronski used one or more Safe Train phone numbers to conduct his fraud.  Paragraph 53 of the Complaint indicates that Dobronski acted in his capacity as manger and member for Safe Train, LLC.  Paragraph 27 of the Complaint indicates that Dobronski placed the phone numbers on the do not call list for his enterprise (i.e., Safe Train, LLC).

In *Cedric Kushner Promotions, Ltd.,* the complaint alleged that the boxing promoter, Don King, was sole shareholder of a company named Don King Promotions.  The defendant took the position that the complaint failed to allege a distinct "person" who performed activities on behalf of a distinct "entity" in order to satisfy RICO pleading requirement.  However, the Supreme Court held that the individual, Don King, was a "person" that was sufficiently distinct from the "enterprise," Don King Promotions, to satisfy the requirements of a RICO claim, even though Don King was the sole owner.  The Supreme Court explained:  "The corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status."  Id.

Similarly, Mr. Dobronski is a member (co-owner) and manager of Safe Train, LLC. Mr. Dobronski is a "person" under RICO, who is distinct from the "enterprise," Safe Train, LLC. If anything, the fact that Mr. Dobronski is one of multiple members of Safe Train, LLC, is even more supportive of the distinctness of the individual "person" and the "entity" in the instant case. However, even if MR. Dobronski were the sole owner of Safe Train, LLC, he would be sufficiently distinct from the enterprise under the Supreme Court holding in *Cedric Kushner Promotions*.

Despite this Supreme Court precedent, Defendant's motion and brief mistakenly seek to apply additional standards of fact pleading that Defendants argue are applicable to RICO claims in which the enterprise is an "association in fact." Defendant relies on *Boyle v. United States*, 556 U.S. 938, 947 (2009) and *Ouwinga v. Benistar*, 694 F.3d 783, 793-94 (6th Cir. 2012), for these alleged additional pleading requirements. However, these pleading requirements do not apply with respect to the allegation that Safe Train, LLC, is the enterprise for RICO purposes because it is a legally formed limited liability company under the laws of the State of Florida. Under the Supreme Court precedent in *Cedric Kushner Promotions*, the existence of a distinct legal entity demonstrates sufficient separateness for RICO purposes and tests applicable to voluntary associations in fact are inapplicable.

15

Finally, Defendant's reliance on *Jacovetti Law P.C. v. Shelton*, 2020 WL 5211034 (E.D. Pa. 2020) is inapposite.  In that case—in contrast to the instant case—there were no allegations of fraud or wire fraud.  Thus, the allegations in Jacovetti are completely irrelevant to claims at-issue in the instant case.

## B.    SME has Properly Pled Predicate Acts of Wire Fraud

As noted above, all elements of fraud have been pled.  *See* Section I, *supra*. Additionally, the Complaint has properly alleged that the communications made by Mr. Dobronski occurred through the use of interstate commerce.  Mr. Dobronski's calls came from Michigan and Florida, while the initial call center that received Mr. Dobronski's fraudulent representations was located in Texas.  Complaint at ¶¶12, 57.

It is, again, critical to appreciate that the key to the fraudulent scheme was not merely that Mr. Dobronski would induce alleged TCPA violations, but that he intended to shield himself from any defense by SME that the call-backs were consented to.  Complaint at ¶7.  By fraudulently posing as the Fake Patient, Mr. Dobronski sought to encourage call-backs, while falsely denying ever inviting such calls.  *Id.*

## C.    SME has Properly Alleged a Pattern of Racketeering Activity

As noted in the Complaint, multiple litigants have now alleged that Mr. Dobronski <u>initiated</u> communications under false names/false pretenses in order to set-up sham TCPA litigation, while attempting to avoid a defense based upon consent. *See, e.g.,* Complaint at ¶60.  Again, it is critical that Mr. Dobronski is doing this in order to disguise his identity and prevent any defense based on his consent to receive call-backs from his targets.  This pattern is designed to invite communications in a manner that allows Mr. Dobronski to falsely argue that communication was never invited in the first-place.  Complaint at ¶7.  Because the Complaint identifies this as a pattern, involving multiple litigants, the pleading standards under RICO are met.

### III.   The *Noerr-Pennington* Doctrine is Inapplicable to Mr. Dobronski's Fraudulent Scheme to Set-Up Sham TCPA Litigation

The *Noerr-Pennington* doctrine does not protect Mr. Dobronski's attempt to use fraudulent information to invite telephone calls that would otherwise violate the TCPA, and later disclaim the invitation he made under an alias.

The *Noerr-Pennington* doctrine holds, generally, that a violation of the Sherman Act cannot be predicated on lobbying campaigns, intended to impact public policy, due to the Petition Clause of the First Amendment.  *See E. R.R. Presidents Conf. v. Noerr Motor Freight, Inc.*, 365 U.S. 127 (1961).  Although this

doctrine has been extended by certain courts outside of the antitrust context,  , numerous courts have held that this doctrine does not protect "sham" litigation.

For example, in *Hartman v. Great Seneca Falls Financial Corp*., the Sixth Circuit held that false statements made in litigation by a bill collector can serve as the basis for a subsequent Fair Debt Collection Practices Act claim by the alleged debtor.  *Hartman v. Great Seneca Fin. Corp.,* 569 F.3d 606, 616 (6th Cir. 2009). The Sixth Circuit held that the "Petition Clause protects legitimate petitioning but not sham petitions, baseless litigation, or petitions containing 'intentional and reckless falsehoods.'" *Id.* (*quoting McDonald v. Smith*, 472 U.S. 479 (1985)).

This same theory precludes Mr. Dobronski from reliance on the *Noerr-Pennington* doctrine in the instant case.  As the Complaint has alleged, Mr. Dobronski initiated telephone contact with SME using a false identity to both (a) set-up a bad-faith TCPA lawsuit against SME and (b) avoid defenses based upon his having consented to call-backs.  Specifically, Paragraph 7 of the Complaint explains: "Mr. Dobronski's actions have gone a step further, by attempting to disguise himself through the use of one or more aliases in order to deceive businesses to make such call-backs and later falsely claim that such calls were uninvited."

Mr. Dobronski's goal was not merely to seek redress under the TCPA for uninvited or harassing calls.  His goal was to invite those calls under false pretenses and later claim that he was not the one making the invitation.   Any such TCPA case filed by Mr. Dobronski or his enterprise would be objectively baseless and is not protected under the *Noerr-Pennington* doctrine.

## IV.    Non-Waiver

Plaintiff hereby denies and contests any/all arguments and allegations made by Defendant's Motion to Dismiss unless otherwise stated herein and relies on the well-pled allegations of the Complaint, which are hereby incorporated by reference.  No argument shall be deemed waived or uncontested based upon the extent to which it is focused-upon in this Brief.

## V.    Alternative Request for Leave to Amend

Plaintiff's Complaint is well-pled and all Counts and causes of action identified therein are supported based upon the allegations in the Complaint. However, if, *arguendo,* the Court disagrees and believes that one or more facts must be pled to survive dismissal, Plaintiff requests leave to amend.  *See* Fed. R. Civ. P. 15 ("The court should freely give leave when justice so requires.").

## VI.    Conclusion

Because of the fact that all Counts and causes of action in the Complaint are well-pled and plausible, accepting as true all statements of fact in the Complaint, the Court should DENY Defendant's Motion to Dismiss.


                                                Respectfully Submitted,


Dated: May 15, 2025                             /s/ Robert Dindoffer
                                                Robert Dindoffer, Esq. (P72319)
                                                The Health Law Partners, P.C.
                                                32000 Northwestern Hwy, Ste 240
                                                Farmington Hills, MI 48334
                                                248-996-8510
                                                rdindoffer@thehlp.com