**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

SPECIALTY MEDICAL EQUIPMENT, INC.,

      Plaintiff,

                                    Case No. 2:25-cv-10664-MAG-CI
-v-                                  Hon. Mark A. Goldsmith
                                    Magistrate Curtis Ivy, Jr.

MARK DOBRONSKI,

      Defendant.
_____/

**DEFENDANT MARK DOBRONSKI's REPLY TO PLAINTIFF'S**
**RESPONSE TO DEFENDANT MARK DOBRONSKI's**
**MOTION TO DISMISS**
**PLAINTIFF'S AMENDED COMPLAINT PURSUANT TO FRCP 12(B)(6)**

# INTRODUCTION

Plaintiff Specialty Medical Equipment, Inc. ("SME") argues that accepting the allegations in its First Amended Complaint ("FAC") as true, will allow its claims to proceed. SME suggests that if the facts pled are merely conceivable—even if improbable—they should survive dismissal. But that argument misapprehends the controlling standard. Under *Twombly* and *Iqbal*, plausibility requires more than the mere possibility of misconduct; it requires factual content that supports a legally viable theory—not just speculation or narrative inference. Here, even assuming the allegations are accurate, they don't state RICO or fraud theories as a matter of law. The conduct alleged—contacting a telemarketer, receiving follow-up calls, and documenting potential TCPA violations—does not fall within the substantive legal framework of either civil RICO or common law fraud.

As a matter of law, the filing of a TCPA claim or even taking preparatory action to pursue a TCPA claim against a telephone solicitor cannot constitute a predicate act for civil RICO purposes. The TCPA is not one of the crimes enumerated in 18 U.S.C. § 1961. Courts have held repeatedly that filing lawsuits, even if allegedly baseless or filed in bad faith, is not itself racketeering activity absent further criminal conduct. *I.S. Joseph Co. v. J. Lauritzen A/S*, 751 F.2d 265, 267(8th Cir 1984). Likewise, SME's fraud claim fails because it cannot establish reasonable reliance on Dobronski's alleged misstatements, given the independent verification obligations imposed by federal Medicare regulations. The allegations, taken as true,

do not state a claim upon which relief can be granted, and the FAC must therefore be dismissed with prejudice.

## I. SME'S RESPONSE CONFIRMS THAT THE FRAUD CLAIM REMAINS LEGALLY DEFICIENT

SME argues that Dobronski provided a false name and false Medicare number during the initial intake process and claims it incurred damages by acting on those representations. However, SME's fraud theory collapses under binding federal regulations that preclude reliance.

Medicare regulations require durable medical equipment suppliers to obtain a written order from a licensed physician before dispensing equipment or submitting a claim. See 42 C.F.R. § 410.38(g). The Medicare Program Integrity Manual imposes a non-delegable duty on suppliers to independently verify patient eligibility, medical necessity, and prescription validity. SME was ***legally prohibited*** from relying on any unverified representations made by a potential patient during an intake call.

Indeed, SME admits in the FAC ¶20 that it discovered the Medicare ID was "inaccurate and/or non-existent." This confirms that SME conducted the requisite checks and discovered the falsity before taking any substantive action. SME's alleged reliance is not just unreasonable; it is foreclosed by regulation. Without reasonable reliance, SME cannot state a claim for fraud.

Fraud also requires concrete, compensable injury. SME's claimed damages—such as administrative costs in processing a purported new patient, legal fees to

2

assess the risk of an anticipated lawsuit, and embarrassment from contacting a physician—fail as a matter of law. Under the standard articulated in *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005), a fraud plaintiff must allege that the defendant's misrepresentation proximately caused the plaintiff's economic loss. Courts require a sufficiently direct relationship between the misrepresentation and the claimed injury. See *Miller v. Asensio & Co.*, 364 F.3d 223, 232 (4th Cir. 2004).

Here, SME cannot make that showing. Its internal administrative efforts and speculative pre-litigation expenses are not the result of reliance on Dobronski's alleged misrepresentations but rather of its own regulatory obligations and litigation aversion. Bottom line, there was no direct, proximate connection between the alleged deception and any economic loss. SME's failure to plead a causal link between Dobronski's conduct and actual loss further dooms its fraud claim.

## II.     SME STILL FAILS TO STATE A CLAIM FOR CIVIL RICO

### A.     SME Has Not Alleged a Distinct RICO Enterprise

SME argues that Dobronski, his wife, and Safe Train, LLC together form an "association-in-fact" enterprise. But beyond alleging mere relationships, SME fails to plead the essential elements required under *Boyle v. United States*, 556 U.S. 938 (2009): a common purpose, ongoing structure, and coordinated conduct. Liability under 18 U.S.C. § 1962(c) requires that Defendants "participate" in the enterprise's conduct. But "participate" means more than mere words, encouragement, presence,

3

or support; it requires some degree of "operation or management of the enterprise." *Stone v. Kirk*, 8 F.3d 1079, 1091-1092 (6th Cir. 1993).

The FAC does not identify any role played by Safe Train or Mrs. Dobronski beyond ownership or equipment use. There are no facts indicating distinct decision-making, operational continuity, or organizational hierarchy. RICO does not permit plaintiffs to repackage ordinary associations as criminal enterprises. Id.

**B. SME Fails to Plead Predicate Acts of Wire Fraud**

SME argues that Dobronski's alleged "canary trap" constitutes wire fraud. But wire fraud requires a scheme to unlawfully obtain money or property through misrepresentation. See *United States v. Prince*, 214 F.3d 740, 747 (6th Cir. 2000).

Even accepting SME's version of events—that Dobronski initiated contact under a false name to lure SME into making a return call—there is no allegation that he sought to obtain anything of value, let alone by fraud. SME shipped no equipment and submitted no claims. Dobronski sought only to document potential noncompliant telemarketing practices. That does not constitute wire fraud.

In this context, the Federal Trade Commission and numerous courts have endorsed plaintiffs posing as interested consumers in order to identify the source of a call. See, e.g., *Mey v. Pintas* 734 F.Supp.3d 515, 524 fn1 (NDWV 2004) ("[T]elemarketers' admissions are not rendered invalid just because Mey (successfully) tricked them into (truthfully) revealing that they sold products for Lifewatch."). And here, the target of Dobronski's alleged "trap" was not SME's

4

wallet, but its conduct. SME's effort to redefine a prospective TCPA claim as criminal wire fraud contradicts both the statutory elements of 18 U.S.C. § 1343 and well-established case law.

### C. SME Has Not Alleged a Pattern of Racketeering Activity

The response relies on Dobronski's prior TCPA litigation to support the existence of a pattern. But SME's rank speculation fails to identify the who, what, when, and how of those cases. Rule 9(b) requires particularized pleading of each predicate act. The facts alleged must support a reasonable inference that the defendant is liable. Here, they do not. More importantly, courts have rejected the notion that aggressive TCPA enforcement constitutes racketeering. In *Jacovetti Law P.C. v. Shelton*, 2020 WL 5211034 (E.D. Pa. 2020), the court dismissed a RICO claim against a so-called "serial TCPA plaintiff," holding that strategic litigation is not a predicate act. SME's attempt to stigmatize lawful enforcement mirrors the theory rejected in *Jacovetti*.

### D. SME'S RICO Claim Fails Because TCPA Enforcement Cannot Constitute A Predicate Act As A Matter Of Law

RICO liability requires specific predicate acts enumerated in 18 U.S.C. § 1961(1). The TCPA is not among them — it is not a criminal statute and cannot serve as a predicate offense. See *Anderson v. T-Mobile*, 2024 U.S. Dist. LEXIS 94404. Nor can the act of preparing to bring or filing a TCPA claim be transmuted into wire fraud. Courts have consistently rejected attempts to convert litigation activity —

5

even if strategic or aggressive — into RICO predicate acts. See *Kim v. Kimm*, 884 F.3d 98, 104 (2d Cir. 2018) ("[A]llegations of frivolous, fraudulent, or baseless litigation activities — without more — cannot constitute a RICO predicate act."); *Weaver v. Boriskin*, 751 F. App'x 96 (2d Cir. 2018). SME's effort to convert Dobronski's documentation of unlawful telemarketing into criminal racketeering squarely contradicts this line of authority

## II. SME'S CLAIMS ARE BARRED BY THE NOERR-PENNINGTON DOCTRINE

SME's core theory is that Mr. Dobronski initiated contact to induce a return call and trigger TCPA liability. But the sham litigation exception turns on whether a lawsuit is objectively baseless—not how the facts arose or the subjective intent behind it. SME concedes in ¶39 that Dobronski's number was on the Do Not Call Registry, which supports a facially plausible TCPA claim under 47 C.F.R. § 64.1200(c). Even strategic or provocative conduct, analogous to legally permissible 'tester' practices upheld under federal law. See *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373–74 (1982)), does not render a lawsuit a sham if the legal theory is colorable. SME does not allege that Dobronski has filed any objectively frivolous lawsuit, let alone one against SME. His intent to gather evidence for a TCPA case is protected activity encouraged by Congress under 47 U.S.C. § 227(b)(3). Accordingly, SME's theory fails under both prongs of the sham exception and must be rejected.

The TCPA is a strict liability consumer protection statute, and SME concedes Dobronski's number was on the Do Not Call Registry. See FAC ¶39. SME's failure to scrub its call list before dialing—not Dobronski's conduct—triggered the violation. Courts do not deem strategic enforcement 'sham litigation' unless it is objectively baseless and subjectively malicious. *Prof'l Real Estate Inv'rs v. Columbia Pictures*, 508 U.S. 49 (1993). Here, SME does not allege Dobronski filed a claim against it—let alone a frivolous one. Without such allegations, the sham exception does not apply. His intent to gather evidence for a TCPA case is protected activity encouraged by Congress under 47 U.S.C. § 227(b)(3). Accordingly, SME's theory fails under both prongs of the sham exception and must be rejected.

## CONCLUSION

This is SME's second attempt to state a claim. It has added more volume, not more substance. The allegations remain speculative, conclusory, and legally implausible. No amount of re-pleading can fix the fundamental mismatch between the facts they allege and the claims they are trying to pursue. Further amendment would be futile, and therefore, this court should dismiss the FAC with prejudice.

Respectfully submitted,

WEISMAN, YOUNG & RUEMENAPP, P.C.

/s/ David E. Sims
By: David E. Sims (P41636)
Dated: May 19, 2025    Attorneys for Def. Mark Dobronski

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\Reply to to Response to Motion to Dismiss Amended Complaint-2.docx

7

## CERTIFICATE OF SERVICE

I hereby certify that on May 19, 2025, I electronically filed this **Defendant Mark Dobronski's Reply To Plaintiff's Response To Defendant Mark Dobronski's Motion To Dismiss Plaintiff's Amended Complaint Pursuant To FRCP 12(B)(6)** with the Clerk of the Court using MIFile ECF system which will send notification of such filing to the following participant:

**Robert Dindoffer  - rdindoffer@thehlp.com**

/s/David E. Sims
Weisman, Young & Ruemenapp, P.C.
Attorney for Defendant
30100 Telegraph Road, Ste. 428
Bingham Farms, MI  48025
Phone No.:  248.258.2700
Fax No.:  248.258.8927
Email:  dsims@wyrpc.com
(P41636)

Dated:        May 19, 2025

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\Reply to to Response to Motion to Dismiss Amended Complaint-2.docx