UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SPECIALTY MEDICAL EQUIPMENT,
INC.,

       Plaintiff/Counter-Defendant,

v.

                             Case No. 2:25-cv-10664

MARK DOBRONSKI,                Hon. Mark A. Goldsmith
                               Mag. Judge Curtis Ivy, Jr.

       Defendant/Counter-Plaintiff,

v.

GOHEALTH 360, LLC, and
FELISHA TOLEDO,

       Additional Counterclaim
       Defendants.

_____

### DEFENDANT/COUNTER-PLAINTIFF MARK DOBRONSKI'S RESPONSE IN OPPOSITION TO COUNTER-DEFENDANTS' <u>MOTION TO DISMISS COUNTERCLAIM</u>

Defendant/Counter-Plaintiff Mark Dobronski, by and through counsel, responds in opposition to the Motion of Counter-Defendants Specialty Medical Equipment, Inc., GoHealth 360, LLC, and Felisha Toledo to Dismiss Counter-Plaintiff's Counterclaim Pursuant to Rules 12(b)(6) and 8(a)(2) of the Federal Rules of Civil Procedure, ECF No. 21.

i

For the reasons set forth below, the motion should be denied. In the alternative, if the Court concludes that any allegation should be pleaded with additional specificity, Dobronski respectfully requests leave to amend rather than dismissal with prejudice.

## CONCISE STATEMENT OF ISSUES PRESENTED

1.     Whether the Counterclaim satisfies Rule 8 where it alleges a coherent telemarketing enterprise involving SME, GoHealth/Every Way Health, Diabetic Supply Team, and Felisha Toledo, and pleads specific facts connecting each Counter-Defendant to the challenged calls.

       Dobronski's Answer: Yes.

2.     Whether the Counterclaim plausibly alleges direct, vicarious, agency, apparent-authority, and/or ratification liability where the calls promoted diabetic medical equipment, Call B identified Specialty Medical Equipment as the provider, the call promoted Every Way Health, Toledo allegedly supervised SME's call centers, and another substantially similar Diabetic Supply Team call occurred after Dobronski made a do-not-call demand to SME/Toledo.

       Dobronski's Answer: Yes.

3.     Whether dismissal with prejudice would be proper where the Counterclaim is the operative initial counterclaim pleading and Counter-Defendants have not shown futility, bad faith, repeated failure to cure, or prejudice.

       Dobronski's Answer: No.

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Dobronski v. Family First Life, LLC*, 2024 WL 1342668 (E.D. Mich. 2025).

*Dobronski v. Tobias & Assocs., Inc.*, 769 F. Supp. 3d 681 (E.D. Mich. 2025)

*Foman v. Davis*, 371 U.S. 178 (1962)

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)

*Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365 (6th Cir. 2015)

*Kensu v. Corizon, Inc.*, 5 F.4th 646 (6th Cir. 2021)

*Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764 (6th Cir. 2015)

*In re Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)

*In re Rules & Regulations Implementing the TCPA*, 20 FCC Rcd. 13664 (2005)

47 U.S.C. § 227

47 C.F.R. §§ 64.1200, 64.1601(e)

Fed. R. Civ. P. 8, 12, 15

## BRIEF IN OPPOSITION

## INTRODUCTION

Counter-Defendants' motion depends on artificially separating facts that the Counterclaim, ECF No. 15, pleads together.

According to Counter-Defendants, this case involves only unidentified calls from "Diabetic Supply Team," with no plausible connection to SME, GoHealth, or Toledo. That is not the Counterclaim that was filed.

The Counterclaim alleges that GoHealth is a cloud-based call-center and marketing services organization that helps clients acquire and engage customers using data analytics, behavioral data, and dynamic call routing, including in the healthcare, medical-supply, Medicare, and pharmacy-lead sectors. It alleges that GoHealth markets under multiple names, including Every Way Health. It alleges that "Diabetic Supply Team" is a fictitious name, assumed name, or marketing alias used by SME, GoHealth, and/or their integrated enterprise. It alleges that SME and GoHealth shared management, supervisory control, call-center infrastructure, lead sources, vendor relationships, scripts, and financial benefit. And it alleges that Toledo exercised operational authority over the enterprise and personally participated in, authorized, directed, ratified, or had the right and ability to control the telemarketing practices at issue.

1

Those are not abstract legal labels divorced from facts. They are tied to the calls themselves.

During Call B, the caller allegedly promoted diabetic and CPAP supplies, stated that Dobronski qualified for a Freestyle Libre III diabetic meter, promoted Every Way Health, stated that Specialty Medical Equipment, Inc. would be the provider for diabetic and CPAP supplies, provided an SME callback number, and identified SME's Michigan location. Two days later, Dobronski called SME to make a do-not-call demand and was transferred to Felisha Toledo, who allegedly identified herself as supervising SME's call centers in Florida and Texas. Despite that notice, a later call using the same Diabetic Supply Team identity and same call pattern allegedly occurred on March 18, 2025.

Those allegations easily satisfy Rule 8 and plausibly plead liability under direct, agency, apparent-authority, and ratification theories. Counter-Defendants may deny those facts. Indeed, SME has already denied many of them. Counter-Defendants' motion systematically misapplies Rule 12(b)(6) by asking the Court to decide disputed questions of fact regarding the structural links of the telemarketing enterprise rather than accepting the Counterclaim's robust, well-pleaded factual allegations as true.

The motion should be denied.

2

## RELEVANT FACTUAL ALLEGATIONS

Dobronski maintains residential telephone numbers 734-768-2170 through 734-768-2179 for personal, family, and household use. The numbers are assigned to a service billed on a per-call and per-minute basis and have been listed on the National Do Not Call Registry since at least June 27, 2024. ECF No. 15 ¶¶ 15–17. Dobronski alleges that he never provided prior express consent or prior express written consent to SME, GoHealth, Every Way Health, Diabetic Supply Team, Toledo, or any agent acting on their behalf to place telemarketing calls to the Dobronski Numbers. *Id.* ¶ 18.

Beginning in June 2024, Dobronski alleges that he received an intensive telemarketing campaign targeting the Dobronski Numbers. *Id.* ¶ 19. The calls allegedly displayed caller-identification numbers in the 734-768-2xxx format, deceptively similar to Dobronski's own exchange, and caller-identification name information was consistently absent. *Id.* ¶¶ 20–21. When answered, the calls allegedly identified as "Diabetic Supply Team" and used a materially consistent script concerning a "prick-less diabetic meter," insurance/Medicare eligibility, Freestyle Libre devices, and transfers to a "senior supervisor." *Id.* ¶ 22. The calls also allegedly involved multiple agents and internal transfers, suggesting centralized call-center operations and shared customer relationship management systems. *Id.* ¶ 23.

3

The Counterclaim identifies three specifically pleaded calls. On February 3, 2025, Call A came from caller-ID number 734-768-2390, with no CNAM. Id. ¶¶ 50–51. After a several-second delay, the caller identified as "John" from "Diabetic Supply Team" and stated that "we are sending you a new prick-less diabetic testing meter." *Id.* ¶¶ 52–53. Dobronski feigned interest and provided the fictitious name "Richard Cady" solely to identify the caller and entity behind the call. Id. ¶ 54. The call was transferred to another telemarketer, "Ben," who immediately asked whether he was speaking to "Richard Cady," demonstrating real-time shared access to call-center records and/or shared CRM systems. *Id.* ¶¶ 55–56.

Approximately five minutes later, Call B came from caller-ID number 734-768-2116, again with no CNAM. *Id.* ¶¶ 58–59. The caller referenced "Richard" and the disconnected line, again demonstrating knowledge of the information provided during Call A. *Id.* ¶ 60. The call was transferred to a female telemarketer, "Mylene with Diabetic Supply Team," who asked whether she was speaking to Richard. *Id.* ¶ 61. Mylene solicited extensive personal and medical information, including name, address, date of birth, email address, Medicare identification number, Social Security number, CPAP usage, and primary care physician. *Id.* ¶ 62. Mylene allegedly stated that Dobronski qualified for a Freestyle Libre III diabetic meter, promoted Every Way Health, stated that Specialty Medical Equipment, Inc. would be the provider for diabetic and CPAP supplies, provided a callback number

4

of 877-622-3023, and identified SME's main office as being in Shelby Township, Michigan. *Id.* ¶¶ 64–67.

On February 5, 2025, Dobronski called SME to make a do-not-call demand. *Id.* ¶ 68. Dobronski requested to speak with SME's president and was transferred to Toledo. *Id.* ¶ 69. Toledo allegedly identified herself as executive assistant to SME's president and stated that she supervises SME's call centers in Florida and Texas. *Id.* ¶ 70. Dobronski informed Toledo that he had received approximately 300 Diabetic Supply Team calls, that the calls were unwelcome, that the Dobronski Numbers were listed on the National Do Not Call Registry, and demanded that the calls stop. *Id.* ¶ 71. Toledo allegedly stated she would handle the request. *Id.* ¶ 72.

Nevertheless, on March 18, 2025, Call C came to 734-768-2170 from caller-ID number 734-768-2309, again with no CNAM. *Id.* ¶¶ 74–75. After a several-second delay, a male telemarketer identified himself as "Mark" from Diabetic Supply Team and began the same type of pitch concerning a "prick-less diabetic testing meter." *Id.* ¶¶ 76–77.

The Counterclaim further alleges that GoHealth self-advertises as a cloud-based call-center and marketing-services organization that uses data analytics, behavioral data, and dynamic call routing to deliver qualified leads in healthcare and related sectors. *Id.* ¶ 4. It alleges that GoHealth markets under trade or brand names, including Every Way Health. *Id.* ¶ 5. It alleges that Diabetic Supply Team is a

5

fictitious name, assumed name, or marketing alias used by SME and GoHealth and/or their integrated enterprise. *Id.* ¶ 7. It alleges that SME and GoHealth operate as a unified telemarketing enterprise sharing management, personnel, supervisory control, dialer and call-center infrastructure, lead sources, vendor relationships, scripts, and financial benefit. *Id.* ¶¶ 8–10. It alleges that Toledo exercised operational authority over this enterprise and personally participated in, authorized, directed, ratified, and/or had the right and ability to control the telemarketing practices described. *Id.* ¶ 11.

## I.    LEGAL STANDARD

### A.    Rule 12(b)(6)

A Rule 12(b)(6) motion tests the sufficiency of the pleading, not the truth of the facts alleged. To survive dismissal, a pleading need only contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plausibility is not probability. It requires only enough factual content to permit the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*

In analyzing a 12(b)(6) motion, the court must "construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Taylor v. City of Saginaw*, 922 F.3d 328, 331 (6th Cir. 2019) (quoting *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012)). However, the court does not have to accept as true

6

"unwarranted factual inferences." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 433 (6th Cir. 2008). The burden of demonstrating that the complaint fails to adequately state a claim falls on the defendant. *Taylor*, 922 F.3d at 331.   However, ordinarily "if the requisite allegations are not in the complaint and a motion to dismiss for failure to state a claim upon which relief may be granted is made under Rule 12(b)(6), the pleader should be given the opportunity to amend the complaint, if she can, to show the existence of the missing elements." *Walker v. Shermeta, Adams, Von Allmen, PC*, 623 Fed.Appx. 764, 768 (6th Cir. 2015).

### B.    Rule 8

Rule 8 requires a short and plain statement showing entitlement to relief. Fed. R. Civ. P. 8(a)(2). It does not require detailed evidentiary proof before discovery. Nor does it require a pleader alleging a coordinated telemarketing campaign to plead each defendant in hermetically sealed counts where the theory is that the defendants acted directly, through agents, through apparent authority, or by ratification. The burden imposed by Rule 8(a)(2) is a minimal one. *Gallardo v. DiCarlo*, 203 F.Supp.2d 1160, 1165 (C.D.Cal. 2002).   Rule 8(a)(2) merely requires that "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).

Dismissal with prejudice is a particularly harsh remedy. Even where a pleading violates Rule 8, the Sixth Circuit has explained that the appropriate remedy is rarely immediate dismissal with prejudice. *Kensu v. Corizon, Inc.*, 5 F.4th 646, 651–53 (6th Cir. 2021). Where a court believes clarification is necessary, the ordinary remedy is leave to amend, absent futility, bad faith, repeated failure to cure, undue delay, or prejudice. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## ARGUMENT

### A.     SME's Rule 12(b)(6) motion is procedurally improper because SME already answered the Counterclaim.

As an initial matter, SME already filed an Answer to the Counterclaim. ECF No. 19. Rule 12(b) provides that a motion asserting a Rule 12(b) defense "must be made before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b). SME did not do that. SME answered first and then joined a Rule 12(b)(6) motion later.

To be sure, a failure-to-state-a-claim defense may be preserved and later presented through a proper Rule 12(c) motion or other authorized procedure. See Fed. R. Civ. P. 12(h)(2). But that is not what SME filed. To the extent the motion is brought by SME under Rule 12(b)(6), it is untimely and should be denied on that basis.

8

At minimum, if the Court elects to treat SME's portion of the motion as a Rule 12(c) motion, the same plausibility standard applies and the motion still fails. The operative allegations, accepted as true, plausibly connect SME to Call B, to the diabetic/CPAP supply sales pitch, to the SME callback number, to Toledo's supervisory role, and to the post-notice Call C.

> **B.     The Counterclaim is not an improper "group pleading"; it identifies each Counter-Defendant's role in the alleged telemarketing campaign.**

Counter-Defendants' Rule 8 argument rests on the assertion that the Counterclaim improperly groups "Counterclaim Defendants or their agents" together. But Rule 8 does not prohibit pleading joint, agency, enterprise, or ratification theories. It requires fair notice of what each defendant is alleged to have done. The Counterclaim gives that notice.

As to SME, the Counterclaim alleges that SME is a Michigan corporation engaged in the marketing and sale of medical equipment. ECF No. 15 ¶ 2. Call B allegedly identified SME as the provider for diabetic and CPAP supplies, gave an SME callback number, and identified SME's Michigan office location. *Id.* ¶¶ 64–67. Dobronski then called SME to make a do-not-call demand and was transferred to Toledo. *Id.* ¶¶ 68–70. These allegations provide SME with direct notice of the basis for liability: SME is alleged to be the seller/provider and beneficiary on whose behalf the diabetic-supply telemarketing calls were made.

As to GoHealth, the Counterclaim alleges that GoHealth is a cloud-based call-center and marketing-services organization that generates and routes leads for, among other sectors, healthcare, medical supplies, pharmacy, Medicare, insurance, and related fields. *Id.* ¶ 4. The Counterclaim alleges that GoHealth markets under several names, including Every Way Health. *Id.* ¶ 5. During Call B, the telemarketer allegedly promoted Every Way Health. *Id.* ¶ 65. Those facts give GoHealth fair notice that it is alleged to have participated in the call-center and lead-generation side of the campaign, including through the Every Way Health brand name.

As to Toledo, the Counterclaim alleges that Toledo was an officer, supervisory employee, or managerial agent of SME. *Id.* ¶ 6. It alleges that she exercised operational authority over the telemarketing enterprise and personally participated in, authorized, directed, ratified, or had the right and ability to control the practices at issue. *Id.* ¶ 11. It further alleges that, when Dobronski called SME to make a do-not-call demand, Toledo identified herself as executive assistant to SME's president and stated that she supervised SME's call centers in Florida and Texas. *Id.* ¶¶ 68–72. The Counterclaim therefore pleads Toledo's alleged role with specificity: supervisory authority, receipt of notice, and failure to stop the campaign.

This is not a case where a pleading merely lists defendants and then recites elements against them collectively. The Counterclaim alleges a coherent chain: Diabetic Supply Team placed the calls; Every Way Health was promoted during Call

B; GoHealth allegedly markets as Every Way Health and operates call-center/marketing infrastructure; SME was identified as the provider and seller/beneficiary; and Toledo allegedly supervised SME's call centers and received actual notice before Call C occurred. That is enough to satisfy Rule 8.

The Counterclaim "outlined each defendant's role in the violations he alleges"; therefore, "it is not problematic that Dobronski asserts each Count against all defendants." *Dobronski v. Tobias & Assocs., Inc.*, 769 F. Supp. 3d 681, 692 (E.D. Mich. 2025). "Dobronski has outlined each Defendant's role in the violations he alleges, providing sufficient clarity into which Defendants are liable for which calls." *Dobronski v. Family First Life, LLC*, 2024 WL 1342668, at *11 (E.D. Mich. 2025).

### C. The Counterclaim plausibly alleges direct liability because "initiating" and "making" telemarketing calls includes causing calls to be made.

Counter-Defendants argue that the callers identified themselves as "Diabetic Supply Team" and therefore the Counterclaim does not plausibly allege that SME, GoHealth, or Toledo placed the calls. That argument is too narrow.

TCPA liability is not limited to the human agent whose voice is heard on the line. The TCPA and implementing regulations repeatedly recognize liability for calls made "by or on behalf of" an entity. *See*, *e.g.*, 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(d)(3). The FCC has similarly recognized that a company on whose behalf a

11

telephone solicitation is made bears responsibility for violations of the telemarketing rules, and that calls placed by a third party on behalf of that company may be treated as if the company itself placed the call. *In re Rules & Regulations Implementing the TCPA*, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

Here, the Counterclaim plausibly alleges that the calls were made to sell or generate leads for diabetic medical equipment and related services. Call B allegedly identified SME as the provider for diabetic and CPAP supplies and promoted Every Way Health. ECF No. 15 ¶¶ 64–66. That is more than a conclusory "benefit" allegation. It is a pleaded call-specific link between the telemarketing pitch and the Counter-Defendants' alleged business operations.

Whether the calls were placed directly by Counter-Defendants, by Diabetic Supply Team as a fictitious name, by GoHealth/Every Way Health as a call-center entity, or by a vendor acting on behalf of SME and GoHealth is a discovery issue. At the pleading stage, Dobronski is not required to possess the internal contracts, dialer records, CRM records, lead-purchase records, or call-center logs that are uniquely within Counter-Defendants' or their vendors' possession.

**D.    The Counterclaim plausibly alleges vicarious liability, apparent authority, and ratification.**

Even if the calls were physically placed by third-party call-center personnel, the Counterclaim plausibly alleges vicarious liability.

12

The FCC's *In re Dish Network, LLC*, 28 FCC Rcd. 6574, 6574, 6584 ¶¶ 1, 28 (2013) ruling recognizes that a seller may be held vicariously liable under federal common-law agency principles for TCPA violations committed by third-party telemarketers, including under principles of actual authority, apparent authority, and ratification. Id. The Sixth Circuit has likewise recognized TCPA vicarious liability under federal common-law agency principles. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015); *Keating v. Peterson's Nelnet, LLC*, 615 F. App'x 365, 371 (6th Cir. 2015).

The pleaded facts support all three theories.

Actual authority is plausible because the calls allegedly concerned the marketing of diabetic medical equipment and related services, the telemarketer identified SME as the provider, and GoHealth is alleged to operate in precisely the call-center and healthcare lead-generation space implicated by the calls. ECF No. 15 ¶¶ 4, 64–67.

Apparent authority is plausible because the caller allegedly used a consistent Diabetic Supply Team identity, promoted Every Way Health, named SME as the provider, gave an SME callback number, and identified SME's Michigan office. *Id.* ¶¶ 52–67. Those facts support the reasonable inference that the telemarketers were acting with authority, or at least apparent authority, to solicit prospective customers for SME and/or GoHealth.

13

Ratification is also plausibly pleaded. Dobronski allegedly called SME on February 5, 2025, demanded that the calls stop, informed Toledo that he had received approximately 300 Diabetic Supply Team calls, and informed Toledo that the Dobronski Numbers were listed on the National Do Not Call Registry. *Id.* ¶¶ 68–72. Toledo allegedly stated she would handle the request. *Id.* ¶ 72. Yet another substantially similar Diabetic Supply Team call allegedly occurred on March 18, 2025. *Id.* ¶¶ 74–79. These allegations plausibly support ratification, failure to supervise, failure to honor a do-not-call demand, and continued acceptance of benefits from the campaign after actual notice.

Counter-Defendants ask the Court to draw the opposite inference: that Diabetic Supply Team was unrelated to SME, GoHealth, Every Way Health, or Toledo, despite the allegations tying the call to SME as provider, Every Way Health as promoted brand, and Toledo as SME call-center supervisor. That is a defense inference, not a pleading-stage basis for dismissal.

### E.    The do-not-call allegations independently support liability.

The do-not-call allegations make this case especially unsuitable for dismissal before discovery.

Under 47 C.F.R. § 64.1200(d)(3), persons or entities making telemarketing calls, or on whose behalf such calls are made, must record a residential subscriber's do-not-call request at the time it is made and honor it within a reasonable time. The

14

rule further provides that if do-not-call requests are recorded or maintained by someone other than the person or entity on whose behalf the call is made, the person or entity on whose behalf the call is made remains liable for failures to honor the request.

The Counterclaim alleges that Dobronski's numbers were on the National Do Not Call Registry, that he made repeated do-not-call demands, that he specifically called SME and Toledo on February 5, 2025 to demand that the calls stop, and that Call C occurred afterward. ECF No. 15 ¶¶ 17, 24, 68–79. These facts plausibly plead liability under the national do-not-call and entity-specific do-not-call rules, at least as to Calls A, B, and C, and particularly as to Call C.

Counter-Defendants may ultimately contend that they did not receive the request, that Diabetic Supply Team was not their agent, or that Call C was unrelated. But those are factual defenses. The Counterclaim pleads the opposite, and those pleaded facts must be accepted as true at this stage.

### F. Counter-Defendants' "false identity" and "invited callback" arguments do not defeat the Counterclaim.

Counter-Defendants repeatedly suggest that Dobronski used a fictitious name or "invited" communications. That argument is not a Rule 12 defense to the pleaded claims.

15

The Counterclaim alleges that Dobronski used the fictitious name "Richard Cady" only after Call A had already been initiated, solely to identify the caller and entity behind the call. ECF No. 15 ¶ 54. Consent obtained during or after an unlawful telemarketing call cannot retroactively become prior express consent for the call that already occurred. Nor does feigning interest during an unwanted call erase the national do-not-call registration, erase the caller-identification requirements, or immunize later calls.

At most, Counter-Defendants' "false identity" argument presents a disputed factual or merits issue. It does not show that the Counterclaim fails to state a claim.

### G. Counter-Defendants do not present a count-specific basis to dismiss the TCPA, MHSSA, or MTCCCA counts.

The motion is not an element-by-element attack on each count. Instead, it is a global attack on Rule 8, direct liability, and vicarious liability. Once those attacks are rejected, the motion should be denied.

Counts I and II allege calls using automatic or automated dialing technology to a service for which Dobronski was charged, without prior express consent or prior express written consent. ECF No. 15 ¶¶ 80–87. The Counterclaim alleges a several-second delay, rapid repeat dialing, calls across multiple Dobronski Numbers, uniform scripts, internal transfers, shared CRM systems, and a campaign exceeding 300 calls. *Id.* ¶¶ 19–36, 50–79.

16

Count III alleges more than one telephone solicitation to National Do Not Call Registry numbers within a twelve-month period. *Id.* ¶¶ 88–91.

Counts IV and V allege violations of the entity-specific do-not-call and identification requirements. *Id.* ¶¶ 92–98.

Count VI alleges violations of 47 C.F.R. § 64.1601(e), including non-callable caller-ID numbers, lack of CNAM, and failure to transmit caller-identification information sufficient to permit a do-not-call request. *Id.* ¶¶ 99–104.

Count VII alleges violations of the Michigan Home Solicitation Sales Act, including calls to residential numbers on the federal do-not-call registry, failure to state the true name of the caller, and calls after a do-not-call request. Id. ¶¶ 105–113.

Count VIII alleges violations of the Michigan Telephone Companies as Common Carriers Act based on intrastate commercial advertising and blocked or misleading caller-identification information. Id. ¶¶ 114–118.

Counter-Defendants have not shown that any of those counts fails as a matter of law. Their real argument is factual: they deny involvement. But denial is not dismissal.

### H.  Counter-Defendants' Generic Rule 8 and Plausibility Authorities Are Materially Distinguishable.

Counter-Defendants' generic Rule 8 and plausibility cases do not overcome Family First and Tobias, which address the relevant pleading issue in the TCPA

context. Those cases do not hold that collective pleading is automatically improper. They hold that a pleading must give each defendant fair notice of the role allegedly played. The Counterclaim does that.

Counter-Defendants' Rule 8 authorities—*Kensu v. Corizon, Inc*., 5 F.4th 646 (6th Cir. 2021), *K.O. v. G6 Hosp., LLC*, 728 F. Supp. 3d 624 (E.D. Mich. 2024), *Arnold v. CooperSurgical, Inc*., 681 F. Supp. 3d 803 (S.D. Ohio July 10, 2023), *Marcilis v. Township of Redford*, 693 F.3d 589, 596 (6th Cir. 2012), *Lee v. Ohio Education Association*, 951 F.3d 386, 392–93 (6th Cir. 2020), and *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 947 (7th Cir. 2013)—stand for the basic rule that a pleading must connect facts to claims and cannot leave defendants guessing what they are accused of. This Counterclaim does not suffer from that defect. It identifies the calls, dates, times, caller-ID numbers, call content, business names, and each participant's alleged role: Diabetic Supply Team is the campaign identity; Every Way Health is the brand promoted during Call B and tied to GoHealth; SME is the provider/seller identified during Call B, with its callback number and Shelby Township office provided; GoHealth is the call-center/marketing-services entity associated with Every Way Health; and Toledo is the SME call-center supervisor who received the do-not-call demand, said she would handle it, and allegedly failed to stop the substantially similar post-notice Call C.

18

That makes this case unlike *Kensu, K.O.,* and *Arnold*, *supra,* which involved confusing, diffuse, or shotgun pleadings that obscured which facts supported which claims. Here, Calls A, B, and C are the specific events; the counts identify the TCPA and Michigan-law duties allegedly violated; and the factual allegations explain how Diabetic Supply Team, Every Way Health, SME, GoHealth, and Toledo fit into the telemarketing chain. That is the role-based pleading *Family First* and *Tobias* held sufficient.

*Marcilis, Lee*, and *Cincinnati Life*, *supra*, do not compel a different result. *Marcilis* involved claims requiring particularized allegations of personal misconduct by government actors. This is a TCPA case, where liability may rest on agency, apparent authority, ratification, or calls made on behalf of a seller. Lee and Cincinnati Life require the pleading to connect facts or events to claims. The Counterclaim does so: Call A and Call B occurred minutes apart; Call B used the fictitious name provided during Call A; Call B promoted Every Way Health and identified SME as the provider; Toledo then confirmed supervisory responsibility over SME's Florida and Texas call centers; and Call C followed after the do-not-call demand.

*Katz v. CrossCountry Mortgage*, Case No. 1:22-cv-00925, 2022 WL 16950481 (N.D. Ohio Nov. 15, 2022), *and Johansen v. Vivant, Inc.*, Case No. 12 C 7159, 2012 WL 6590051 (N.D. Ill. Dec. 18, 2012) are also distinguishable. Those

19

cases addressed bare prerecorded/artificial voice or ATDS allegations. Here, Dobronski pleads several-second delays before live connection, repeated calls, short intervals between calls, neighbor-spoofed caller-ID numbers, blank CNAM, uniform scripts, internal transfers, and shared CRM information—indicia *Family First* held sufficient at the pleading stage.

Finally, *Christopher Seri v. CrossCountry Mortgage, Inc.*, 2016 WL 5405257 (N.D. Ohio Sept. 28, 2016) is materially different and was already distinguished in *Tobias*. *Seri* involved sparse allegations connecting one entity's website to another entity's leads. *Tobias* rejected reliance on *Seri* where Dobronski pleaded business names, call transfers, applications, emails, management roles, knowledge, and benefit from the scheme. This case is like *Tobias*, not *Seri*: Dobronski pleads Diabetic Supply Team as the campaign identity; Every Way Health as the brand promoted during Call B; SME as the provider identified during Call B; SME's callback number and Shelby Township office; Toledo's supervision of SME's Florida and Texas call centers; actual notice of the do-not-call demand; and a substantially similar post-notice Diabetic Supply Team call.

Counter-Defendants' cases therefore reinforce, rather than defeat, the governing point: collective pleading is permissible when the factual allegations identify each defendant's alleged role. The Counterclaim meets that standard.

**I.      Dismissal with prejudice would be improper; if the Court wants more**

**specificity, leave to amend should be granted.**

Counter-Defendants ask for dismissal with prejudice, but they do not come close to satisfying that standard.

This is Dobronski's operative initial Counterclaim pleading. The Court has not previously ordered a more definite statement. The Court has not previously required Dobronski to amend these counterclaims. There has been no repeated failure to cure. There is no showing of bad faith. There is no showing of prejudice from a clarifying amendment. And there is no showing of futility.

The Sixth Circuit has cautioned that even when a pleading violates Rule 8, immediate dismissal with prejudice is rarely appropriate. *Kensu*, 5 F.4th at 651–53. Rule 15 likewise provides that leave to amend should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

Accordingly, if the Court concludes that any allegation should be pleaded with more specificity, the proper remedy is leave to amend, not dismissal with prejudice.

Respectfully submitted

WEISMAN, YOUNG & RUEMENAPP, P.C.
By: s/David E. Sims
David E. Sims (P41636)
Attorney for Plaintiff
30100 Telegraph Road, Suite 428
Bingham Farms, MI   48025
Dated:   May 18, 2026          Phone No.:   248.258.2700
dsims@wyrpc.com

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\TCPA-MWD v SME Resp in Opp to Motion to Dismiss-5-18-26.docx

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 18, 2026, I electronically filed **Defendant/Counter Plaintiff Mark Dobronski's Response In Opposition To Counter Defendants' Motion To Dismiss Counterclaim and Brief in Support** with the Clerk of the Court using MIFile ECF system which will send notification of such filing to the following participant:

**Robert Dindoffer, Esq. - <u>rdindoffer@thehlp.com</u>**

**Lisa A. Messner, Esq. - <u>lmessner@mslawgroup.com</u>**

<div style="margin-left: 40%;">

<u>/s/David E. Sims</u>
Weisman, Young & Ruemenapp, P.C.
Attorney for Defendant
30100 Telegraph Road, Ste. 428
Bingham Farms, MI   48025
Phone No.:   248.258.2700
Fax No.:   248.258.8927
Email:   dsims@wyrpc.com
(P41636)

</div>

Dated:        May 18, 2026

J:\D\Dobronski Mark 8129-\Specialty Medical Equipment -0140\Pleadings\TCPA-MWD v SME Resp in Opp to Motion to Dismiss-5-18-26.docx